# CHARLESTON.

SECURITY BANK NOTE CO. *v.* SHRADER.

Submitted June 8, 1910.    Decided March 5, 1912.

1. FRAUDS, STATUTE OF—*Original Promise—Intent of Parties.*

In determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded. In ascertaining such intention, the words of the promise, the situation of the parties and all the circumstances attending the transaction should be taken into consideration. *Johnson* v. *Bank*, 60 W. Va. 320.    (p. 477).

2. APPEAL AND ERROR—*Judgment on Appeal.*

The judgment of a circuit court, in a case appealed from a justice's court, will not be reversed for failure of the record to disclose the entry of a plea and joinder of issue thereon. (p. 479).

(BRANNON, PRESIDENT, absent).

Error to Circuit Court, Taylor County.

Action by the Security Bank Note Company against Samuel W. Shrader. Judgment for defendant, and plaintiff brings error.

*Reversed and Rendered.*

*Harry Friedman,* for plaintiff in error.

*A. W. Burdett,* for defendant in error.

POFFENBARGER, JUDGE:

Defense to this civil action, commenced in a justice's court and appealed to the circuit court, is made under the statute of frauds, and the principal question presented here is, whether the evidence makes an issue proper for jury determination, the court having set aside a verdict for the plaintiff on the hypothesis of insufficiency of the evidence or a decided preponderance thereof against the verdict.

The action was brought to recover a balance of $297.00, due on an account for engraved corporation bonds and certificates of stock and a corporation seal press, manufactured and deliver-

ed at the instance and request of the defendant. These supplies were obtained for the use of the West Virginia Consolidated Coal Company and the purchase price was $897.00. The negotiations commenced by correspondence, February 17, 1906, and continued, in that form, until after March 8, 1906. Between that date and March 14, 1908, the defendant, after notice of his intention so to do, called personally at the plaintiff's factory in Philadelphia and completed the placing of the order. It does not appear that he gave any notice as to the capacity in which he was acting or said how, when, or by whom, the goods would be paid for. He was notified by a letter, dated March 14th, that the order had been entered. In acknowledging the receipt of this letter, on the next day, he described it as one in reference to his order, saying "my order placed with you yesterday for 1000 bonds for the West Virginia Consolidated Coal Company." On April 10th, he approved the proofs by telegram which he confirmed by a letter of the same date. On the next day, the plaintiff, in a letter, acknowledging the receipt of the telegram and letter, and giving information as to the progress of the work, made this inquiry: "Kindly inform us, Mr. Shrader, how you want to settle for these, whether you want us to bill them directly to you, to the company on 30 days time, or to discount the bill at 2 per cent." Three days later, he replied as follows: "In reference to the settlement of your account for the bonds and certificates will say that you may make out your bill to me for the West Virginia Consolidated Coal Company at 30 days; on receipt of same I will place the matter before the first meeting of the Company, and presume they will send you check within ten days. However, I will attend to this matter and have it adjusted as quickly as possible." On July 13, 1906, he sent the plaintiff his check in part payment, by letter saying: "I enclose you herewith my personal check for $600.00, to be credited on your account of your bill against the West Virginia Consolidated Coal Company. I do this pending settlement of the account in full, which will be forwarded to you in a few days. Kindly forward me proper bill crediting the $600.00 that I have sent to you personally." Thomas A. Bradley, president of the plaintiff company, testified that it relied solely upon the defendant for payment and extended no

credit to the coal company, it having been ascertained that he had a good commercial rating, and the coal company none at all. He further says the goods were charged, billed and shipped to the defendant. As to whether they were actually charged to him, on the books of the plaintiff, and, if so, on what date, he said he spoke from recollection and belief, and was rather contradictory in some of his statements.

The vital and controlling inquiry upon this evidence was, to whom did the plaintiff extend credit or upon whom did it rely, as the real debtor, for payment? That the supplies furnished were intended for use by the coal company is not conclusive upon this inquiry. All the facts and circumstances must be considered. The question is one of intent. The contract was not merely one of purchase of manufactured articles. It was really one for work, labor and materials, and the work seems to have been substantially completed before any inquiry was made as to the source of payment, or direction given as to how the charge should be made. The letter in which the inquiry was made bears date nearly a month after the order was entered, and says "I see no reason why these bonds and certificates should not leave here on Friday next." A letter from the defendant indicates a postponement of the date until the Monday after that Friday. Whatever may have been the exact stage of the work, it is clear that much of it had been done. Moreover, there is no direct or positive evidence, that the goods were charged to the coal company. Shrader's letter, saying "Make out your bill to me for the West Virginia Consolidated Coal Company" is somewhat indefinite, but, if it could be construed as a plain direction to make the charge against the coal company, there is no proof that it was so made. On the contrary, we have the positive testimony of Bradley that it was made against the defendant on the books of the company and the goods billed and shipped in his name. If, however, a charge to the coal company upon the books of the plaintiff appeared, a great volume of authority says this would not be conclusive. Nor does it clearly appear that such a corporation as that described in the bonds and certificates had been actually organized or even chartered at the date of the beginning of the work. It may have existed only in contemplation. All this, we think, made a case for the

jury, and this view is well sustained by principles announced in *Johnson v. Bank,* 60 W. Va. 320, asserting and applying the following propositions: "In determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded. In ascertaining such intention, the words of the promise, the situation of the parties and all the circumstances attending the transaction should be taken into consideration." "In many cases in which goods have been sold or money has been advanced to one person on the oral promise of another. to be answerable therefor, a decisive test as to the applicability of the statute of frauds to the promise is afforded by the determination of the question on whose credit the goods were sold or the money advanced. If it appears that the sale or loan was made in reliance solely on the credit of the promisor, and on his unconditional agreement to be answerable therefor, the statute does not apply; and the rule is the same in the case of an oral promise to pay for services rendered to a third person at the request of the promisor. But in all such cases it is requisite that credit should be given exclusively to the promisor; if any credit be given to him for whose benefit the promise is made the promisor is not liable unless his promise is in writing, and this is so, although the collateral undertaking may have been the principal inducement to the delivery of the goods or the performance of the services. In determining to whom credit was given the jury are to take into consideration the extent of the undertaking, the expressions used, the situation of the parties, and all the circumstances of the case.  * * *    In determining to whom, as between the promisor and the person for whose benefit the promise is made, the credit was actually given, an important consideration is the manner in which the creditor entered the transaction on his books. Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him and relied upon him for payment, and therefore that the promise of another to be answerable for the debt was at most a collateral undertaking. However, this evidence is not conclusive, but is open to explanation, and the weight of it is for the jury." 20 Cyc. 180-81-82-83.

The attack upon the secondary evidence of Bradley, relating

to the state of the books, seems not to have been made in the court below. The record shows no objection to it in any form. If admissible, failure to object let it in for such weight as the jury saw fit to give it. *Armstrong* v. *Coal Co.,* 67 W. Va. 589, 614. Though the witness spoke only from recollection and made some mistakes as to dates, his was the only testimony bearing upon the question, and his credibility and the weight of his evidence were clearly questions for the jury.

As the record shows no entry of a plea by the defendant, the technical rule, requiring reversal for such defect in the record, applied in common law actions, as will be seen by reference to *Good* v. *Chester,* 65 W. Va. 13, and *Stevens* v. *Friedman,* 53 W. Va. 79, and many other cases cited in the opinions of the two here mentioned, is invoked to sustain the action of the court in setting aside the verdict. This is not a common law action. The procedure is statutory and liberal in all respects. There can be no judgment by default in a justice's court. The plaintiff is always required to prove his case. Though the statute contemplates, allows and requires pleadings, nothing more is necessary than enough "to enable a person of common understanding to know what is intended." Clause 5, sec. 50, ch. 50, Code. Section 68 of the same chapter commands the justice to render judgment as the right shall appear. Here the parties proceeded as if a general denial of the plaintiff's demand had been entered, and the case was tried by a jury on its merits. Under such circumstances and in a case commenced in a justice's court, a judgment will not be reversed, merely because the record does not show the entry of a plea and issue joined thereon. *Simpkins* v. *White,* 43 W. Va. 125.

We think, therefore, the court erred in setting aside the verdict. Its order will be reversed and a judgment rendered here upon the verdict.

*Reversed and Rendered.*