# CHARLESTON.

REPAIR *et al.* v. KREBS LUMBER CO.

Submitted June 14, 1912.    Decided November 4, 1913.

1. FRAUDS, STATUTE OF—*Credit to Promisor—Primary Obligation.*

    A letter, authorizing the addressee to purchase from a merchant with whom he had been dealing, but who had refused him further credit, goods needed to enable him to complete a contract with the writer, containing the writer's promise that he would send his check, on receipt of monthly statements of account approved by the addressee, upon the faith of which credit is extended, and approved monthly statements of account rendered to the writer, creates a primary and binding obligation on him to pay such accounts. (p. 141).

2. SAME—*Credit to Promisor—Charges on Creditor's Books.*

    In an action against the author of the letter for the price of goods so sold, it is immaterial that the books of original entry do not show that they were charged to him. (p. 141).

    (LYNCH, JUDGE, absent.)

Error to Circuit Court, Harrison County.

Action by John F. Repair and others against the Krebs Lumber Company. Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*Davis & Davis* and *Osman E. Swartz*, for plaintiff in error.

*R. S. Douglass*, for defendants in error.

WILLIAMS, JUDGE:

Defendant was awarded this writ of error to a judgment recovered against it by paintiffs for $405.75, in the circuit court of Harrison county. The action was on an account for goods sold and delivered to one B. F. Satterfield, on the alleged request of defendant, and was submitted on a demurrer to plaintiffs' evidence. The only question presented to us is: Does the evidence support the verdict?

Satterfield had sold defendant the timber on a tract of land in Tucker county, and had agreed to manufacture and deliver same on board the cars, at stipulated prices per thousand feet, depending on grades. While he was engaged in fulfilling this contract he purchased supplies from plaintiffs. His account with them was running behind, and about the last of August, 1907, they declined to extend him further credit. Thereupon he wrote defendant, and in repy received the following letter:

"Sept. 3, 1907.

Clarksburg, W. Va.

"Mr. B. F. Satterfield,

Pleasant Run, W. Va.

Dear Sir: Your favor of 29th, rec'd., and we are sorry to learn of the various troubles you are having. I had a talk with Mr. Krebs and he said he would send you a check for 250 but he has not done so yet, he is not well and is not at home—and I suppose he has not had a chance to get it off.

"We decided that you better go to your man from whom you buy your groceries and arrange with him and have him mail us your account every month also your feed man and we will send them a check on the 15th, following this will give us time to investigate, of course you understand that you will have to O. K., all these bills before we could pay them. If you think this will help the matters any you can arrange it in this way. I think it will save you a lot of annoyance.

"Do what you think the best.

Yours Most Truly,

KREBS LBR. CO.,

Per STEMPLE."

Shortly after receiving this letter Satterfield presented it to plaintiffs and thereby secured further credit. The items on the account bear date subsequent to the time the letter was shown to plaintiffs. After writing the letter, defendant paid a previous bill of Satterfield by check, made payable direct to the order of plaintiffs. H. L. Stemple was defendant's general manager, and made the original contract on its behalf with Satterfield for the timber. His authority to obligate the company is not disputed. Does the letter authorize Satterfield to buy goods on defendant's account? We think it does. That plaintiffs were induced by the letter to extend credit is fully proven. It is also proven that they complied with the terms of the letter, by having the accounts approved by Satterfield before mailing them to defendant. Its promise to send plaintiffs a check on the 15th of the month following the receipt of the account, is equivalent to a promise to pay the account. That the promise was not made direct to plaintiffs is not material; it was made to Satterfield for their benefit, although they were not named, because they were the persons from whom Satterfield was buying his supplies; and they can claim the benefit of it. Defendant recognized its obligation to pay, by subsequently sending checks payable to plaintiffs, and by letters addressed to them. In one of these letters, written on the 10th December, 1907, about a week before the account was closed, which must have been in reply to a request from plaintiffs for payment, it says: "Referring to your favor of the 7th inst., we have referred this matter to Mr. Krebs, and asked him, if possible, to favor you with check on account," and closes by saying, that it hopes "we will be able to help you out in the near future." It is signed, "Krebs Lumber Co., By H. L. Stemple." The "account" mentioned in this letter was evidently the one which Satterfield had made with plaintiffs. The promise was original and made for a consideration. It clearly appears that the payments to plaintiffs were to be a discharge, *pro tanto*, of its obligation to Satterfield for the timber, and that the promise was made to enable him to complete his contract with the promisor, from which it was to derive a benefit. The promise was made as well for its own benefit as for the benefit of Satterfield. *Howell* v. *Harvey*, 65 W. Va. 310, and *Hardware Co.* v *.Goodman*, 68 W. Va. 462.

That the account was not charged against Krebs Lumber Company on plaintiffs' books originally, is not a controlling circumstance to show to whom credit was given; under the ruling of *Howell* v. *Harvey, supra,* Krebs Lumber Company and Satterfield are both liable to plaintiffs. The letter was not the promise to pay an existing debt of another, but was authority to Satterfield to buy goods on the writer's account.

The court properly overruled defendant's demurrer to the evidence, and the judgment is affirmed.

*Affirmed.*