# CHARLESTON.

BACHINSKY v. FEDERAL COAL & COKE CO. *et als.*

Submitted September 19, 1916.   Decided September 26, 1916.

1. JUSTICES OF THE PEACE—*Appeal—Pleading.*

   A case appealed from a justice's court may be tried in the circuit or intermediate court, as the case may be, on the pleadings and issue made in the justice's court, whether the pleadings be oral or in writing. (p. 723).

2. SAME—*Pleading—Issue Made.*

   In an action, brought in a justice's court and stated in the

summons to be for damages for wrong, the justice's docket shows that defendant pleaded "not guilty", and a trial was had. Held: that the record shows a proper joinder of issue, even if such were indispensable, and a literal compliance with Secs. 50 and 169, Ch. 50, Barnes' Code.   (p. 723).

3.   EVIDENCE—*Leases—Admissibility*.

When the termination of the tenancy is a disputed question between the landlord and one claiming to be a subtenant, the lease contract between the landlord and his immediate lessee is admissible evidence.   (p. 723).

4.   CONTRACTS—*Evidence—Signature—Errors*.

Where one of the parties to a contract is unable to write and makes his mark to signify his assent to it, and directs another to write his name, and he writes it as he understood it to be pronounced, which happens not to be the true name, such mistake is subject to explanation, and does not vitiate the contract. (p. 727).

5.   LANDLORD AND TENANT—*Right of Action—Re-entry*.

A tenant is not entitled to damages to his business, conducted on the leased premises, occasioned by the lawful re-entry of the landlord after the termination of the tenancy.   (p. 727).

Error to Circuit Court, Marion County.

Action by Pete Bachinsky against the Federal Coal & Coke Company and others, begun in justice court, and appealed to circuit court.   There was a judgment there for plaintiff, and defendants bring error.

*Reversed.*

*W. S. Meredith*, for plaintiffs in error.

WILLIAMS, PRESIDENT:

By this writ of error the Federal Coal & Coke Company, J. W. Devison and W. H. Skinner, the last two named being agents and servants of the former, plaintiffs in error, seek reversal of a judgment of the intermediate court of Marion county, recovered against them by the plaintiff, Pete Bachinsky, and later affirmed by the circuit court of said county, on writ of error to said intermediate court.   The suit was brought in a justice's court, and judgment there obtained by plaintiff for $50.00.   An appeal was then taken to the circuit

court of Marion county by defendants and that court referred it to the intermediate court for trial. It was there tried by a jury, resulting in a verdict and judgment for plaintiff for $250.00, and, on writ of error to the circuit court, the judgment was affirmed, that court holding that no error was committed in the trial.

Numerous errors are assigned, one of which is that the case was tried without joinder of issue. This assignment is not well taken. The transcript of the justice's docket shows that summons was issued on the 21st of January, 1913, stating that plaintiff's claim was for ''$300.00 damages for wrong;'' that all parties were present and ready for trial on the 6th of the following February; that defendants pleaded ''not guilty and do not owe;'' and that witnesses were then examined, on behalf of both parties, and judgment was rendered. True no written complaint or plea was filed, either before the justice or in court. But Sec. 169, Ch. 50, Barnes' Code, provides that, the appeal may be tried upon the pleadings made up in the justice's court, and clause 2, Sec. 50 of the same chapter, provides that, the pleadings in a justice's court may be oral or in writing, and, if oral, the substance of them shall be entered by the justice in his docket. We have held that, where the record fails to to show any issue was formally joined, in a suit originating in a justice's court, but does show that the case was fully tried as if a definite issue had been joined, such failure to join issue is not reversible error. *Bank Note Co.* v. *Shrader,* 70 W. Va. 475; and *Simpson* v. *White,* 43 W. Va. 125. But it is not necessary to resort to the principle of those cases, for the record does show that there has been a substantial compliance with the letter of the statute. The action, although not expressly so denominated in the record, is an action of trespass on the case; and the plea, ''not guilty'', orally made in the justice's court presented a proper issue, and the record shows that the intermediate court tried the case on the issue made up in the justice's court.

The action is for damages for the destruction of plaintiff's business as a boarding house keeper, and for injury to his furniture. The Federal Coal & Coke Company removed

plaintiff's furniture from one of its houses which he claimed the right to occupy, as its subtenant under an oral lease from Nick Martinick, to whom it had leased the house by written contract. This lease was admitted as evidence, on behalf of defendants, and was later excluded, on motion of plaintiff, and the jury instructed not to consider it. This ruling of the court was excepted to and is assigned as error. We here quote the lease in full:

## "FEDERAL COAL AND COKE COMPANY.
## "HOUSE LEASE. NO. 26.

"THE FEDERAL COAL & COKE COMPANY, a corporation, doth hereby lease to the Nick Partine the certain house in Marion County, West Virginia, described as Number 26, to be held by the said Nick Partine, Lessee, aforesaid, as tenant from month to month, beginning on the 23 day of Sept. 19—, at the monthly rental of $4.50 per month, which the said lessee agrees to pay to the said lessor at the expiration of each month during the continuance of the tenancy hereby created; which tenancy is hereby expressly made determinable at the will of the said lessor, at the expiration of any month thereof, upon giving to said Lessee a written notice to quit, at least ten days before the end of the month, at the expiration of which the said tenancy is to be terminated. Said house being for the use of an employee of the Lessor, it is further agreed that should the Lessee quit the employ of the Lessor, whether voluntary or by reason of his being discharged, this lease shall terminate and said Lessee shall immediately leave said leased premises, and without notice surrender possession thereof to the Lessor. And immediately upon the determination of said tenancy, it shall be lawful for the said Lessor, without legal process, to re-enter into and upon the said demised premises, and to take and have exclusive possession of the same and every part and parcel thereof. And it is hereby mutually agreed by and between the said Lessor and said Lessee that whenever during the continuance of the said tenancy any part of the rent hereinabove reserved shall be in arrear, such rent in arrear, together with all other moneys, debts or accounts, if any, which shall or may be due

and owing by the said Lessee to the said Lessor, shall constitute and be a credit upon, and shall be offset against and deducted from any sum or sums which may or shall, at the same time, be due by the said Lessor to the said Lessee, whether for labor or any other account, and every such credit and deduction shall be, as against said lessor, equivalent to the payment of the amount thereof by the said Lessee in cash. And it is further agreed that the said lessee shall not sublet or assign the said demised premises without the consent, in writing, of the said Lessor for that purpose first had and obtained.

"Witness the following signatures this 23 day of Sept. 1912.

"FEDERAL COAL & COKE CO.,

By J. W. Devison, Supt.        C. K.

W. H. Skinner.                              118

X Nick Partine."

It does not appear why the lease was excluded. It may be that it was because the name of the lessee, appearing thereon, is Nick Partine, instead of Nick Martinick, the right name of the lessee. He, as well as plaintiff, is a Russian and unable to speak English. W. H. Skinner, who was the company's agent in making the lease, and who signed the same as a witness, testified that Nick Martinick made his mark on the lease opposite the name Nick Partine, which he, Skinner, says he wrote down as he understood it to be pronounced by Nick Martinick at the time the lease was signed. Nick Martinick himself testified that his check number was 118, which is the number appearing on the lease, and that he made his mark at the bottom of it. Martinick's testimony proves that he made his mark for the purpose of signing the lease, for, he says, "I thought that paper means that I took that house in my name." It is also proven that Martinick paid the rent to defendant company. He says, "They took it in the office every month from my pay." Nor is it denied that the name, Nick Partine, was intended for Nick Martinick, who is shown to be the real lessee. The written lease was, therefore, important to prove the contractual relation of the parties, and the right of the defendant company to re-enter and take posses-

sion of the house, and it was prejudicial error to exclude it
from consideration as evidence.

Plaintiff rented the house from Nick Martinick by oral con-
tract, paid him the rent therefor and boarded and lodged
about fourteen of his fellow countrymen, most, if not all, of
whom were employes of defendant company. Plaintiff was
not himself its employe. None of the occupants of the house
having gone to work on the morning of January 14, 1913, the
defendant Devison, who was the coal company's superintend-
ent, went to the house, about eight o'clock A. M., and told the
men to go to work. Some of them said they were not going to
work that day, as it was Russian New Year day, and a big
holiday. There is also evidence tending to show that a num-
ber of them were drinking and were intoxicated. Devison told
them, if they were not going to work he wanted them to get
out of the house, and immediately discharged them from the
services of the company. Nick Martinick was present and was
one of the men so discharged. An hour or so later, W. H.
Skinner, constable of Marion county, and also a special police
officer employed by the coal company, came to the house with
teamsters, wagons and teams, and moved all the furniture
out of the house and piled it up by the railroad tracks, with-
out covering to protect it from the weather. There is evidence
tending to prove that it rained on it and damaged the bed-
ding, and that some of the furniture was roughly handled and
broken. Liability for breakage and for damage from expos-
ure to the weather, is apparently admitted, for Mr. Devison
testified that he told Mr. Glumacich, who came to him in be-
half of plaintiff and complained that it was raining, or looked
like rain, and the goods would be damaged if they were not
protected, he would have them put back again, and further
says he did have them put back in the house a day or two
thereafter. He further admits he promised to replace any-
thing that was broken and restore the goods to the condition
they were in when they were taken out of the house. Regard-
less of his admission, the defendants would be liable for the
damages thus occasioned.

Over their objection, and to which action of the court the
defendants excepted, the intermediate court permitted plain-

tiff to be asked the following question, which he answered as follows: "Q. Please state to this jury whether or not you have been damaged by reason of the defendants destroying your boarding house business, and if you have been damaged, please state how much?   A. I lost $300.00 there by that." This was prejudicial error.   Plaintiff was not entitled to damages on that account.   Martinick's tenancy had ended on his discharge, and, by the terms of the lease, the lessor had the right of re-entry, without legal process, immediately upon its termination.   It is proven and not denied by any witness, that defendant company's superintendent discharged Nick Martinick before plaintiff's goods were removed from the house; and, by the terms of the contract, the lease terminated *eo instanti*.

It seems to be well settled law that, upon the termination of the tenancy, the lessor may re-enter and take possession, without legal process; provided he does so peaceably and without violence or breach of the peace.   But he has no right to do so forcibly, or to commit an assault upon his tenant. This right is fully sustained by the text-writers and by the decisions, both in England and in this country.   4 Blackstone's Commentaries, 148; *Turner* v. *Meymott,* 1 Bingham 157, 130 Eng. Rep. 64; *Rex* v. *Wilson,* 8 T. R. 358, 101 Eng. Rep. 1432; *Cockerline* v. *Fisher,* 140 Mich. 95; *Commonwealth* v. *Haley,* 4 Allen 318; Jones on Landlord and Tenant, Sec. 556; 2 McAdam on Landlord and Tenant, (4th ed.), Sec. 275; 2 Tiffany on Landlord and Tenant, Sec. 216; and 2 Taylor on Landlord and Tenant, (9th ed.), Sec. 531.   But the right of re-entry, without judicial proceedings, is a qualified and limited one, and should be exercised with much caution, lest it occasion a breach of the peace, in which case the lessor becomes a trespasser *ab initio*.   There is no evidence here tending to prove that force or violence, or even threats of violence, were used by the servants and agents of defendant coal company in order to obtain possession of the house, or that any resistance was made by any one then in the house. The tenancy was ended in the manner provided by the terms of the lease which expressly provides that the landlord might thereupon re-enter without judicial process, and the evi-

dence shows that it did so and obtained possession lawfully. Even if it be admitted that plaintiff was a subtenant, entitled to the same rights as Martinick, he could claim no greater right than his assignor, whose tenancy ended immediately upon his discharge from employment. But the terms of the lease forbade subletting without the lessor's written consent which, so far as the record discloses, was never obtained. Neither can it be said defendant company tacitly consented, for the jury would not be warranted by the evidence to infer that it knew of the subletting by Martinick to plaintiff, and such information is necessary to show tacit consent. Plaintiff paid the rent to Martinick and he paid it to defendant company. True plaintiff bought the groceries for his boarding house at the company's store, but he admits they were charged to, and paid for by Martinick, in the same way the rent was paid. Plaintiff was cook, as well as boarding house keeper, and the evidence tends rather to show the company's agents thought he was employed in that capacity rather than to prove any knowledge by them of his alleged tenancy. He was not the company's employe, and the men he boarded paid him so much per month, and there is no evidence that the company knew of that arrangement between plaintiff and its employes. Martinick himself having no right to occupy the house, after the lease had terminated, it follows, as a matter of course, that plaintiff, who claimed under him, was not entitled to damages on account of the breaking up of his boarding house business; and the court erred to the prejudice of defendants in permitting plaintiff to testify concerning his damages in respect thereto. Damages on this account being clearly improper, it appears that the amount assessed by the jury is largely in excess of what plaintiff has proven himself entitled to, according to the most favorable view of his own evidence. Much of the furniture was old when he purchased it. Plaintiff does not pretend to itemize his damages, but says he paid nearly $200.00 for all the furniture, and that it was ruined. Dan Malike, from whom he purchased some of it, testified that he sold plaintiff five beds, three chairs, and everything he had in his house at the time, except two beds, for $42.00. It does not appear what plaintiff paid for the

other furniture he had in the house, only some of which was broken. The proof does not justify the amount of damages assessed by the jury.

Having already determined the law of the case, it is unnecessary to enter upon a lengthy discussion of the alleged error in refusing instructions asked for by defendants. It suffices to say that defendants' instructions, Nos. 2, 4, 5, 6, and 7, should have been given. Some of them are even more favorable to plaintiff than the law warrants, especially No. 6, which would submit to the jury the question, whether or not the relation of landlord and tenant existed between plaintiff and the defendant coal company, on the 14th of January, 1913. There being no contradiction of the testimony, whereby it is proven the tenancy of Martinick terminated on the morning of that day, in a manner provided by the terms of the lease, the court would have been justified in instructing the jury, as a matter of law, that defendant company had a right to re-enter immediately, without judicial process; provided it could do so without force or violence and without committing a breach of the peace.

Our conclusion is to reverse the judgment of the circuit court, and likewise the judgment of the intermediate court of Marion county, set aside the verdict of the jury, and remand the case to the circuit court for further proceedings therein according to law.

*Reversed.*