THE HINES & SMITH COMPANY *vs.* HARRY GREEN.

Aroostook.    Opinion September 27, 1922.

*Whether a promise to pay the debt of another is that of an original debtor or a guar-*
*antor, depends upon the question as to whom credit was given.    The obligation*
*is original if the promise is made at the time or before the debt is created,*
*and the credit is given solely to the promisor; but is collateral if the*
*promise is merely super-added to the promise of another to*
*pay the debt, he remaining primarily liable; if any credit*
*whatever is given to the third person, so that he is in any*
*degree liable, the oral promise is not valid.*

In ascertaining to whom the credit was extended the intention of the parties must govern, and this intention should be ascertained not only from the words used in making the promise, but also from the situation of the parties and all the circumstances surrounding the transaction; and the question is, what the parties mutually understood by the language, whether they understood it to be a collateral or a direct promise.

The rules of construction relative to guaranties are the same as those applicable to other contracts; viz., in cases of ambiguity the language is construed most strongly against the guarantor; it is the duty of the court to ascertain and give effect to the intention of the parties; in order to arrive at the intention of the parties the circumstances under which, and the purposes for which, the contract was made, may be proved and must be kept in view in its construction.

While the manner in which the account has been charged by the creditor in his books of account, is very strong evidence and entitled to great weight in arriving at the intention of the parties to a promise, yet the fact that the account is charged to the debtor is not generally held to be conclusive evidence that credit was extended to him, and the reason for so making the charge is open to explanation, the weight of which is for the jury to determine.

When there is no substantial conflict in the evidence as to the precise terms of the alleged promise, that the court should decide, as a matter of law, the meaning of the words used and whether the alleged promise is original or collateral; but where the language used, together with the surrounding facts and circumstances, makes it doubtful whether the parties intended to create an original or a collateral obligation; then the intention should be determined by the jury under proper instructions by the court.

In the case at bar all the conflicting testimony as to what was said and done, the book charges in the light of the attending facts, the nature of the contract, the acts to be done, the time, place and manner of performance, the situation and relation of the parties, and their subsequent statements and conduct, were all heard by the jury under appropriate instruction and they determined, as matter of fact, that the intention of the parties was to enter into an original promise and so held the defendant liable.

On motion for new trial by defendant. This is an action of assumpsit to recover for automobile tires, shipped by plaintiff to one J. M. Agel, upon his written order, and charged to said Agel. Plaintiff seeks to recover of defendant as the original promisor, which defendant denies, and alleges that if he made any promise, it was a collateral one, and not an original promise, hence not enforceable under the Statute of Frauds. A verdict was rendered for plaintiff and defendant filed a general motion for a new trial. Motion overruled.

The case is fully stated in the opinion.

*O. L. Keyes*, for plaintiff.

*W. R. Roix, Cook, Hutchinson & Pierce and Jasper Hone*, for defendant.

SITTING:  CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

PHILBROOK, J.   Action of assumpsit to recover the price of automobile tires which, upon the written order of one J. M. Agel, were, by the plaintiff, shipped and charged to Agel. It is not claimed that the delivery of the merchandise to Agel contained any element of benefit to the defendant, but it is claimed by the plaintiff that the defendant is an original promisor to pay for the merchandise. This the defendant denies and says that if he made any promise, which he strenuously insists he did not, that such promise was a collateral one and not enforceable because of R. S., Chap. 114, Sec. 1, Par. II, commonly known as the Statute of Frauds. A verdict was rendered in behalf of the plaintiff. No exceptions to any rulings or instructions of the presiding Justice are presented, but by motion, based upon the customary grounds, the defendant seeks to have that verdict set aside and a new trial granted.

The test to decide whether one promising to pay the debt of another is an original debtor, or a guarantor, is whether the credit

was given to the person receiving the goods. *Doyle* v. *White*, 26 Maine, 341; *Fairbanks* v. *Barker*, 115 Maine, 11. It is well understood that the obligation is original if the promise is made at the time, or before the debt is created, and the credit is given solely to the promisor, but is collateral if the promise is merely superadded to the promise of another to pay the debt, he remaining primarily liable. *Security Bank Note Co.* v. *Shrader Ann. Cas.* 1914 A, note at Page 490. If the merchandise be sold in any part upon the credit of the third person to whom it was delivered, and the promise of another to pay, upon which the vendor relies, is an oral one, then such promise is collateral, is within the statute, and cannot be enforced. *Starkey* v. *Lewin*, 118 Maine, 87; The court of South Dakota, in *Wood* v. *Dodge*, a case frequently cited, reported in 120 N. W. 774, says, "The rule in this class of cases seems to be well settled. An oral promise to pay for goods furnished at the promisor's request to a third person is not valid if the transaction is wholly or partly upon the credit of the third person so as to create a debt against him to which the oral promise is merely collateral. If any credit whatever is given to the third person, so that he is in any degree liable, the oral promise is not valid."

INTENTION.

In ascertaining to whom credit was extended, the intention of the parties must govern. This intention should be ascertained from the words used in making the promise, the situation of the parties, and all the circumstances surrounding the transaction. The real character of the promise does not depend altogether on the form of expression, but largely on the situation of the parties; and the question is, always, what the parties mutually understood by the language, whether they understood it to be a collateral or a direct promise. *Davis* v. *Patrick*, 141 U. S., 479; 35 U. S. (Lawyer's Ed.), 826; *Johnson* v. *Bank*, 55 S. E., 394; *Security Bank Note Co.* v. *Shrader*, 74 S. E., 416. Our own court, in *Smith* v. *Loomis*, 72 Maine, 51, states the principle thus: "Whether the engagement was original or collateral must be determined by the contract itself; although if doubt remains, the particular words which import the promise may be interpreted in the light of attending facts, the nature of the contract, the acts to be done, the time, place and manner of performance, the situation and rela-

tions of the parties, and sometimes even by the aid of the subsequent conduct of the parties showing a practical construction put upon doubtful, terms by themselves." In the same case our court declared that the law is well settled by cases in this State, in Massachusetts and Connecticut, and in the Supreme Court of the United States, first that guaranties are governed by the same rules of construction as other contracts; second, that in cases of ambiguity the language is construed most strongly against the guarantor; third, that it is the duty of the court to ascertain and give effect to the intention of the parties; and, fourth, that in order to arrive at the intention of the parties the circumstances under which, and the purposes for which, the contract was made may be proved and must be kept in view in its construction.

INTENTION AS SHOWN BY BOOK CHARGES.

In the note to *Mankin* v. *Jones,* 15 L. R. A. (N. S.) 224, the writer, fortifying his statement with many citations, says, "It is well settled that while the manner in which the account has been charged by the creditor in his books of account is very strong evidence, and entitled to great weight in arriving at the intention of the parties to a promise, yet the fact that the account is charged to the debtor is generally held not to be conclusive evidence that credit was extended to the debtor, and the reason for so making the charge is open to explanation."

"Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him, and relied upon him for payment, and therefore that the promise of another to be answerable for the debt was at most a collateral undertaking. However, this evidence is not conclusive but is open to explanation, and the weight of it is for the jury." *McGowan Commercial Co.* v. *Midland Coal & Lumber Co.,* (Mont) 108, Pac. 655; *Wood* v. *Dodge,* supra; *Security Bank Note Co.* v. *Shrader,* supra.

QUESTION OF LAW OR FACT.

The issue being based upon an alleged contract, it is generally admitted that when there is no substantial conflict in the evidence

as to the precise terms of the alleged promise, then the court should decide, as a matter of law, the meaning of the words used which are alleged to constitute the promise, and to decide, as a matter of law, whether the alleged promise is original or collateral. But where the language used, together with the surrounding facts and circumstances, makes it doubtful whether the parties intended, by the promise, to create an original or a collateral obligation, then the intention should be determined by the jury, under proper instructions by the court. 25 R. C. L., 490, and cases there cited; note on *Security Bank Note Co.* v. *Shrader,* supra.

The claims made by the parties, as to the facts in the case at bar, somewhat briefly stated, are as follows: The plaintiff corporation, testifying through Mr. Wellington, its manager, says that it does business at Caribou; that just after dinner on the 13th of March, 1919, a stranger, who turned out to be J. M. Agel, came to the store of the plaintiff; that as a result of conversation with Mr. Agel he made up a list of the automobile tires charged in the writ; that, upon request of Mr. Agel, he called the defendant, at Presque Isle, by telephone, and told him that a relative of his was there, that he wanted to buy some tires, also that Mr. Agel wanted to know if defendant would be at home that night, as Mr. Agel desired to make a call upon him; that Mr. Agel signed a written order for the tires, taking a copy of the order with him, and left the store; that in the later hours of the same afternoon Wellington was called by telephone from Presque Isle; that he recognized the calling voice as that of the defendant, who said, "This is Harry Green talking, . . . . Mr. J. M. Agel is here . . . . he is an uncle of my wife, he is all right, he is good." To this Wellington replied, "I don't know anything about him. We have have never had any dealings with him." And then the defendant said, "Well, you let him have the tires and you can look to me for your pay," and to this Wellington replied, "All right, Harry." After this second telephone talk, and before the tires were shipped, Wellington and the defendant met at a fraternal order meeting when the defendant asked if the tires had been shipped and, upon receiving a negative answer, said "This fellow is all right, he has got a store in Fitchburg, Massachusetts, and he has got another store in Bangor. You ship the tires to him and you can look to

me for the pay." The tires were shipped to Mr. Agel on March 21, 1919. Upon the books of the plaintiff they were charged to the latter, and an invoice sent him, but no further bill or statement was so sent. About the first of July, 1919, plaintiff learned that Mr. Agel had filed a petition in the bankruptcy court. This fact was brought to the attention of Mr. Green, by Mr. Wellington, and Mr. Green said, "You don't have to worry any about it. I am going to pay you for them—for these tires." Mr. J. A. Parker, a clerk in plaintiff's employ in the year 1919, corroborated Wellington as to the conversation held after plaintiff had learned of the Agel proceedings in the bankruptcy court.

The defendant does not exactly remember the conversations as stated by Wellington and repeatedly claimed that whatever he did say was not with reference to J. M. Agel but was with reference to a firm in which one Sam Agel was a partner. He strongly urges that the promise relied upon by plaintiff, being an oral one, is within the Statute of Frauds and not enforceable, as being a collateral promise and not an original one. He claims that the book charges, made to J. M. Agel, are strong evidence of a collateral promise, within the appropriate rules of law, and that the delay of plaintiff in making demand for payment until after Agel had filed his petition in bankruptcy, together with all other facts and circumstances in the case, unquestionably point to a promise which is well within the statute.

But all the conflicting testimony as to what was said and done, the book charges, in the light of the attending facts, the nature of the contract, the acts to be done, the time, place and manner of performance, the situation and relation of the parties, and their subsequent statements and conduct, were all heard by the jury, under appropriate instructions, and they determined, as matter of fact, that the intention of the parties was to enter into an original promise and so held the defendant liable. We cannot say that the jury were manifestly wrong in that finding.

*Motion overruled.*