# CHARLESTON.

A. L. ROBERTS v. J. W. BOWERS et al.

(No. 5301)

Submitted May 12, 1925.  Decided May 19, 1925.

1. FRAUDS, STATUTE OF—*Statute of Frauds May be Proven Under General Issue Denying Existence of Debt.*

   In an action to recover the purchase price of goods sold, tried on appeal from a judgment of a justice of the peace, the statute of frauds need not be specially pleaded, but may be proven under the general issue denying the existence of the debt.  (p. 216).

   (Frauds, Statute of, 27 C. J. § 447).

2. SAME—*Question Whether Oral Promise was Original or Collateral, Depending on Conflicting Evidence, is One of Fact for Jury.*

   Where the question whether an oral promise was original or collateral must be determined from material conflicting evidence and the inference to be drawn therefrom, and the evidence and circumstances are such that a verdict of the jury for either party could not be set aside because of insufficient evidence to support it or because against the decided weight and preponderance of the evidence, such question is one of fact to be determined by the jury.

   (Frauds, Statute of, 27 C. J. § 491).

3. SAME—*Weight of Evidence as to How Goods Were Charged on Vendors Books Held for Jury.*

   In determining to whom credit was extended, as between the promisor and the person to whom the goods sold were delivered, while evidence that the goods were charged on the vendor's books, "T., ordered by B.," tends to show that the vendor gave credit to T. and relied on him for payment, such evidence is not conclusive, but is open to explanation, and its weight is for the jury.  (p. 218.)

   (Frauds, Statute of, 27 C. J. § 481).

   NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Roane County.

Action by A. L. Roberts against J. W. Bowers and another. From a judgment of a justice of the peace, dismissing the case as to defendant James Tanner, and for plaintiff against defendant Bowers, defendant Bowers appealed to the circuit.

court, where the case was tried *de novo.* Judgment for defendant Bowers, and plaintiff brings error.·

*Judgment reversed; verdict set aside; new trial awarded.*

*Wm. S. Ryan* and *Thos. P. Ryan,* for plaintiff in error.
*Grover F. Hedges,* for defendants in error.

MILLER, JUDGE:

Plaintiff brought an action against the defendant Bowers and James Tanner, before a justice of the peace. The justice rendered judgment against Bowers for the amount of plaintiff's claim, but dismissed the case as to Tanner, "it appearing from the evidence that there is not any liability against him." Defendant Bowers appealed the case to the circuit court, where it was tried *de novo.* When all the evidence tendered by the parties was introduced, at the direction of the court the jury returned a verdict for the defendant Bowers, the order entering judgment on the verdict further reciting, "and the plaintiff not demanding nor requiring judgment against the said James Tanner, it is therefore considered by the court that the plaintiff take nothing by his action against J. W. Bowers, and that this suit be dismissed."

From the plaintiff's evidence it appears that Tanner was refused credit by plaintiff, who was engaged in the retail merchandise business. Plaintiff testifies that: "Later, then, Mr. Bowers came into my store and asked me if James Tanner had been there and wanted to run an account, and I told him that he had. He says, 'Did you let him have them?' I says, 'No, sir, I didn't, Mr. Bowers.' And he asked me why, and I told him that I didn't know the man and I couldn't afford to take a chance. So he asked me then if his credit was good there, and I·says, 'Yes, Mr. Bowers, your credit is good for all you want to buy.' 'Well,' he said, 'You let Jim Tanner have whatever he wants and I will see that you get your money.' " Plaintiff further says that: "Later on, one day Mr. Bowers came into my store and said to Paul Slider, one of the clerks, 'How is Jim Tanner's account running?' He says, 'Talk to Mr. Roberts right there, he is the man.' He turned to me and asked me, and I says, 'It is getting

pretty big Mr. Bowers.' And I don't remember the exact amount, but it was some place in sixty dollars—near sixty-five dollars. And he says, 'Don't let it get too big.' I says, 'Say the word, Mr. Bowers, and I will shut it off right now.' And he hesitated a little bit, stood there, and says, 'Well, he has got to live.' And just turned around and walked out.''

A number of witnesses, who were in the store at the time of the two conversations detailed above, corroborate the testimony of plaintiff. So far as the record shows the only system of bookkeeping used by plaintiff was the McCaskey system of charge slips. A large number of these, or carbon copies thereof, were introduced in evidence. They are all headed: ''James Tanner, Ordered by J. W. Bowers.''

Defendant testified that he did not promise to pay for the goods furnished to Tanner. He says: ''I did not say it in that way. I was there, anyhow, and I said, 'Tanner is good for his debts, he is honest.' That is what I said and all I said.''

It is submitted by plaintiff in error that the trial court directed a verdict on the ground that the promise, if made, was to answer for the debt of another, and came within the statute of frauds; and that the statute not being pleaded, the defendant 'waived defense on that ground. In this state it has been repeatedly held that the statute of frauds need not be specially pleaded, but may be relied upon under the general issue of non-assumpsit. *Howell* v. *Harvey,* 65 W. Va. 310; *McClanahan* v. *Otto-Marmet Coal & Mining Co.,* 74 W. Va. 543. And in *Alkire* v. *Orchard Company,* 79 W. Va. 526, it was held: ''In an action brought before a justice of the peace the statute of frauds need not be specially pleaded, but may be proven in defense of such suit under an answer denying the plaintiff's right to recover.''

Does the alleged promise of defendant come within the statute of frauds? An oral promise to pay is enforceable if it is primary and not secondary, if original and not col-lateral. This proposition of law is admitted by defendant. But it is submitted that the evidence so clearly shows that

the debt created was that of Tanner, that the court was jus-
tified in directing a verdict for defendant Bowers.

To whom was the credit extended? ''In ascertaining to
whom credit was extended, the intention of the parties must
govern. This intention should be ascertained from the words
used in making the promise, the situation of the parties, and
all the circumstances surrounding the transaction. The real
character of the promise does not depend altogether on the
form of expression, but largely on the situation of the parties;
and the question is always what the parties understood by
the language—whether they understood it to be a collateral
or direct promise.'' 25 R. C. L. 489; citing *Johnson* v. *Bank,*
60 W. Va. 520, 9 Ann. Cas. 893; and *Security Bank Note
Co.* v. *Shrader,* 70 W. Va. 475, Ann. Cas. 1914-A 488. If
we are to believe the testimony of plaintiff, he would not and
did not extend credit to Tanner, a fact of which he informed
defendant Bowers, before the latter, as he says, asked him
to let Tanner have the merchandise. And this conversation
is corroborated by several witnesses. Can we find the fact
to be that defendant did not understand that the goods were
later delivered to Tanner on his credit, after he had inquired
of plaintiff if his credit was good? None of the goods were
delivered before the conversation relied on by plaintiff to
bind Bowers. And it appears that plaintiff later informed
Bowers of the status of Tanner's account, according to the
testimony of plaintiff and others. Why did Bowers inquire
about the account, if he was not interested? Tanner was
his brother-in-law.

In *Johnson* v. *Bank, supra,* it was held that: ''When
the issue in an action at law involves the question whether
an oral promise is original or collateral, which must be deter-
mined from material conflicting evidence and circumstances
and inferences therefrom, and the evidence and circumstances
are such that the verdict of a jury for either party could not
be set aside because without sufficient evidence to support
it or because plainly against the decided weight and pre-
ponderance of the evidence, such questions is one of fact to
be determined by a jury.'' The question here is whether or

not the alleged promise comes within the statute, and must be determined from the evidence and the inferences to be drawn therefrom, a question for the jury and not for the court. To whom did the parties understand the credit was extended?

It is said that the fact that Tanner was charged with the goods delivered to him, is conclusive that he was held primarily liable for the debt. On this question it was said in *Security Bank Note Co.* v. *Shrader, supra:* ''Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him and relied on him for payment, and therefore that the promise of another to be answerable for the debt was at most a collateral undertaking. However, this evidence is not conclusive, but is open to explanation, and the weight of it is for the jury.'' See, also, 27 C. J. 386; 25 R. C. L. 491. In this case the McCaskey register slips read: ''James Tanner, Ordered by J. W. Bowers.'' There is no evidence that any other record of the account was kept by plaintiff. Here again is the question of intent and understanding between the parties. May it not be inferred that Tanner's name on the charge slips was simply to show to whom the goods were delivered; and the positive testimony of plaintiff is that he would not and did not give credit to Tanner. This case is a stronger one in favor of plaintiff than the case of *Security Bank Note Co.* v. *Shrader;* for here the name of defendant Bowers does appear on the charge slips.

From the evidence adduced on the trial, we are of opinion that the case should have been submitted to the jury with proper instructions by the court, for the ascertainment of the facts, whether such promise as is alleged was made by defendant Bowers, and if so, whether it was original or collateral.

The judgment will be reversed, the verdict of the jury set aside, and a new trial awarded plaintiff.

*Reversed; verdict set aside; new trial awarded.*