# CHARLESTON.

GEORGE BARLEY *et als.* v. MAURICE E. SAMETH *et als.*

(No. 6228)

Submitted October 23, 1928.    Decided December 4, 1928.

464

*J. N. Harman, Jr.,* for plaintiff in error.

*Joseph M. Crockett* and *C. A. Tutwiler,* for defendants in error.

Woods, Judge:

Plaintiffs obtained a verdict against Dr. J. L. Sameth, Maurice E. Sameth and Robert W. Gaines for $454.79, the price of goods purchased by the two last named defendants. From a judgment entered on the verdict Dr. Sameth prosecuted this writ of error.

Dr. Sameth, who owned a large tract of land some distance from Welch, which he had divided into town lots, in 1924,

sold all but eighteen of his two hundred eighteen lots to E. W. Cullen, Ann Lopinsky and Octavia Sameth, who thereafter incorporated as the North Welch Land Company. On October 7, 1924, the land company entered into a written agreement with Maurice E. Sameth (husband of Octavia Sameth) and Robert W. Gaines, by which the latter undertook to develop the property of the land company at their own expense and to sell lots therefrom on a commission basis. Gaines was the guiding spirit in this project.

Plaintiffs' first business transaction with Gaines—a sale of a number of axes—is described by Felix Barley, one of the plaintiff firm of Barley-Lovett Hardware Company, as follows: ''Dr. Sameth and Robert W. Gaines—Dr. Sameth brought him down there and introduced him and I shook hands with him and Dr. Sameth told me what he was going to do and then he bought these tools and I delivered them up Browns Creek the next morning.'' A statement therefor, according to Dr. Sameth, was received by him, whereupon he went immediately to plaintiff's store and informed Felix Barley that he did not buy the axes and that the same must not be charged to him. He further testifies that Barley made an excuse that he was not familiar with the work up there, and assured him that he would remove the charge and would not mix up his account with that of Mr. Gaines' any more. ''At the same time,'' says Dr. Sameth, ''I told them not to let any one at all get anything for me without my written consent or unless I come in myself and not to let no one have anything at all without my consent.'' This is not denied. No further item was charged against Sameth's personal account, and it is in evidence that the bill for the axes was paid by Maurice E. Sameth, who, together with Gaines, accompanied Dr. Sameth to plaintiff's establishment at the time the Doctor entered his complaint.

Felix Barley, after making the statement hereinbefore quoted concerning the first sale, continued: ''Two or three days after that something come out that Gaines was not going to be responsible for this property, and I said to Doc there is something wrong here, and he said Gaines is all right; I have just wired Norfolk, Virginia, and he is well recommended,

and I said if I can't get any satisfaction out of you I will get my tools and bring them back, and before I got to the store Doc said leave them alone and that is my property, and *I extended them more credit with Dr. Sameth's guarantee.*" Prior to this alleged conversation it seems that plaintiff had extended credit to Gaines and Maurice E. Sameth to the extent of about ninety or one hundred dollars. Dr. Sameth denies commenting on Gaines' responsibility. He states that he was approached by Barley and interrogated concerning Gaines; that he told Barley he did not know anything about him, and at that time gave Barley the name of a man in Norfolk, Virginia, who had introduced Gaines to him, and advised Barley to get in communication with this man by telephone, informing Barley that he (Sameth) was likewise anxious to find out more about Gaines, because Gaines wanted to buy a saw mill from him. While Barley states that he thereafter charged purchases of Gaines to Dr. Sameth and North Welch Land Company, neither name appears on a single invoice of goods sold and delivered to Robert W. Gaines. Each invoice bears the words: ''Sold to Robert W. Gaines.'' There is nothing on the ledger to indicate that charges were made to North Welch Land Company, and the only claim against Dr. Sameth, in seeking to hold him liable, is the notation on the ledger sheet of ''Guaranteed Dr. Sameth''. There is a question as to whether that statement was written there after the latter conversation with Dr. Sameth or just before the first trial in February, 1925. The court reporter testified that on the former trial the entry looked as if it had been recently made in ink, and that she remembered it because the attorney for the defendant had her to make several notations on the record concerning its appearance. Plaintiff also sought to show that Dr. Sameth got the benefit of some of the materials sold and delivered, in order to support its theory that the obligation on the part of the latter was an original rather than a collateral one.

Two errors are relied upon for reversal: (1) The failure of the trial court to give to the jury the peremptory instruction offered on behalf of the defendant; and (2) the refusal of the trial court to set aside the verdict of the jury.

The vital and controlling inquiry upon this evidence was, to whom did the plaintiff extend credit or upon whom did he rely, as the real debtor for payment? The general rule, of course, is well recognized that it is a collateral and not an original promise that is within the statute of frauds requiring a promise to answer for the debt, default or misdoing of another to be in writing, in order to fix liability on the promisor. It is well understood from the decisions, also, that the obligation is original if the promise is made at the time or before the debt is created and credit is solely given to the promisor, but collateral if the promise is merely super-added to the promise of another to pay the debt, he remaining primarily liable. The difficulty, however, has been for the courts to determine from conflicting evidence and the varying language used by the parties whether the promise or contract falls properly in one category or the other. In determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded; and in determining such intention the words of the promise, the situation of the parties and all the circumstances attending the transaction should be taken into consideration. It is often difficult, from the mere words in which a promise is made, to determine whether any credit was given to a third person, and the undertaking therefore collateral to the engagement or the liability of such person, or whether it was a wholly independent and original undertaking. So, the courts must rely upon the circumstances of each particular case, and its general features, in order to ascertain the intention of the parties, and how they viewed it, whether it was doubtful whether the contract was a contract of suretyship or guaranty, or an original undertaking.

Aside from the circumstances surrounding the inception of the transaction, we have seen that the plaintiff and the defendant Sameth, about one week thereafter, had some conversation about the responsibility of Gaines. Assuming that the plaintiff, immediately following such conversation, did enter in ink on his ledger "Guaranteed Dr. Sameth", does such a notation of itself show that credit from that time on was in fact extended to Dr. Sameth alone? The word "guarantee"

is defined by Bouvier to mean to make oneself responsible for the obligation of another, or in other words, "an undertaking to answer for another's liability, and collateral thereto." Of course, this is true where the debt is in existence at the time of the promise. At common law, a guarantee could be made by parol; but by the Statute of Frauds, section 1, Chapter 98, Code, it is provided that "No action shall be brought" whereby "to charge any person upon a promise to answer for the debt, default or misdoings of another * * * unless the promise, contract, agreement, representation, assurance, or ratification or some memorandum or note thereof be in writing, and signed by the party to be charged thereby or his agent." But, there is authority to the effect that guarantees may be given for liabilities thereafter to be incurred (as here), and will attach when the liability actually accrues. In this class the promise will be original, and not within the statute, *if credit is given to the promisor exclusively.* 2 Term 80; *Pomeroy* v. *Patterson,* 40 Ill. App. 275. Whether such promises come within the statute is not, however, wholly settled. Brown, Stat. Fr. §158; Brandt, Sur. & Guar. §§59, 61. On principle, such contract seems within the statute if there is a liability on the part of any third person to the promisee. In the instant case the plaintiff's books of account show that credit was not extended to the alleged promisor exclusively. In this suit the plaintiff seeks to hold liable for his debt not alone the defendant Dr. Sameth, but Maurice E. Sameth and Robert W. Gaines as well. The entry on the ledger, in the absence of other testimony, under the authorities, puts the present case so far as Dr. Sameth is concerned within the statute, for credit was not given to him exclusively. In other words, the law is, if the transaction be such that a third person remains responsible to the promisee, such promise or undertaking is collateral, and under the statute of frauds will not bind the promisor, unless it be in writing. *Radcliff* v. *Poundstone,* 23 W. Va. 724; *Johnson* v. *Bank,* 60 W. Va. 320.

The jury here decided the case in favor of the plaintiff. Is there sufficient evidence to support the verdict? Ordinarily, where the question whether an oral promise was orig-

inal or collateral must be determined from materially conflicting evidence and the inferences to be drawn therefrom, such question is one of fact to be determined by the jury. *Roberts v. Bowers,* 99 W. Va. 215. The general rules which govern in other civil actions, in regard to the weight and sufficiency of the evidence, are applicable in actions involving the statute of frauds. However, the evidence to prove a promise by one person to pay the debt of another as a new and original undertaking, must be clear and satisfactory. 27 C. J. 387. Otherwise, the case will fall within the statute of frauds. This is a wholesome rule without which the statute might be easily evaded, especially since the law has made the plaintiff a witness in his own behalf. Doubtful expressions could easily be made the foundation of a promise. As to whether a case has been made here, we are met at the outset with the rule that in determining to whom, as between the promisor and the person for whose benefit the promise was actually given, an important consideration· is the manner in which the creditor entered the transaction on his books. Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the seller gave credit to him and relied upon him for payment, and, therefore, that the promise of another to be answerable for the debt *was at most a collateral undertaking. Security Bank Note Co. v. Shrader,* 70 W. Va. 475, Anno. Cas. 1914A 488; *Hurst Hardware Co. v. Goodman,* 68 W. Va. 462, 32 L. R. A. (N. S.) 598; *Cutler v. Hinton,* 6 Rand. 509; 20 Cyc. Law & Proc. p. 183; 29 Am. & Eng. Enc. Law (2nd ed.) p. 294.

The goods sold in the instant case were charged on the invoices to Gaines to whom they were delivered. Another principle of law is that a charge to the beneficiary together with the promisor raises an inference that credit was not alone given to the latter. As we have seen, the plaintiff here, by his suit makes a ˙joint charge of liability. Then, as we have shown, the plaintiff by his entry on his ledger, ''Guaranteed Dr. Sameth'', indubitably fixed the status of the undertaking, if in fact entered into by defendant, as a collateral one. These actions on his part are insurmountable barriers to his recovery against the defendant Dr. Sameth unless, of course,

such evidence is explained, as where the other facts in the case show the promise to have been original. *Repair* v. *Krebs Lumber Co.*, 73 W. Va. 139. True, it was held in the *Roberts* case, *supra*, that the proof justified its submission to the jury. But that case is strikingly dissimilar to the one we have here under consideration. There, the goods were charged on the books of account as follows: "James Tenner, Ordered by J. W. Bowers". After Tanner had been refused credit, Mr. Bowers went to the plaintiff and after being advised that his (Bowers') credit was good, said to Mr. Roberts, "Well, * * * you let Jim Tanner have whatever he wants and I will see that you get your money." A subsequent allegation strongly supported Bowers' alleged promise. Viewed in its most favorable light, the instant case is very like that of *Calverley* v. *Wirth*, 59 Ill. App. 553, where the account sued on ran thus: "H. H. Mitchell (Chas. Calverley security) in account with W. E. Wirth, Grocer." This was held to be a collateral obligation on the part of Calverley.

There is left in the record but little, if anything, to rebut the legal inference arising from the charging of the goods to the person to whom they were delivered. The proof for this purpose must be of a very strong character. 25 R. C. L., p. 491. Possibly the most important circumstance attempted to be shown in favor of the plaintiff's contention was that Dr. Sameth had received the benefit of the purchases. It was reasonably well shown that all the material sold by the plaintiff did not go into the store building of the North Welch Development Company, a part of which was erected on the property reserved by Dr. Sameth. It must be remembered that the mere fact that Dr. Sameth may have derived some benefit from articles furnished by the creditor, will not of itself suffice except there be shown a super-added original promise, as was done in *Howell* v. *Harvey*, 65 W. Va. 310.

The evidence of the plaintiff at best tended only to show that he primarily looked upon Gaines as his debtor for the merchandise sold and upon Sameth as security. Have we not this interpretation of the contract from the lips of Felix Barley himself in the words, heretofore quoted, that he had "extended to them more credit with Dr. Sameth's guar-

antee''? From a careful consideration of the whole testimony the Court is constrained to hold that the plaintiff has failed to carry the burden in this case cast upon it by the law. Its evidence is not of the indubitable nature demanded in cases of this kind. When the required evidence is lacking, the courts must refuse the enforcement of the contract. It is to guard against doubtful claims that the statute was enacted. The trial court should have given to the jury the peremptory instruction requested to find for the defendant.

*Reversed and remanded.*