# WHEELING.

RADCLIFF v. POUNDSTONE et als.

Submitted June 11, 1883—Decided April 5, 1884.

1. Where the consideration of a defendant's undertaking or promise is for money or property to be furnished to or received by a

third person, if the transaction be such that the third person re-
mains responsible to the person who furnishes him with such
money or property, or from whom the consideration proceeds,
such promise or undertaking is collateral, and under the statute
of frauds will not bind the defendant, *unless it be in writing.*
(p. 731.)

2. A case brought by a creditor of the husband against the husband
   and wife, to charge the estate of the wife with her husband's
   debt upon her promise to pay the same, in which it was held
   that her *promise was collateral* and not being in writing was
   void by the statute of frauds.

WOODS, JUDGE, furnishes the following statement of the
case:

On the 17th day of October, 1873, Richard S. Radcliff, re-
siding in the county of Marion in this State, instituted his
suit in chancery in the circuit court of that county, against
George W. Poundstone, and his wife Mary A. Poundstone,
Samuel Thompson, residing in Pennsylvania, John W.
Corothers of the said county of Marion, and the Discount
and Deposit Bank of Brownsville, in Pennsylvania, and sued
out an order of attachment therein, against the estates of the
defendants other than Corothers, for the sum of three thou-
sand three hundred and fifty dollars and sixteen cents with
interest and costs, which on the same day was executed on
the First National Bank of Fairmont, as a garnishee, having
in its possession funds belonging to the absent defendants.

The plaintiff's bill alleged, that "he and George W. Pound-
stone, a resident and citizen of Pennsylvania, entered into a
co-partnership for the purpose of buying and selling coal
upon the Monongahela and Ohio rivers in this and adjoining
States bordering thereon; that they mutually agreed with
each other to furnish equal amounts of the capital, to be used
in the business, and to share equally the profits and losses,
which should result from their business; that said business
should be conducted in the plaintiff's name, and that he
should give his personal attention to the management there-
of." His bill further alleged, that at the time of entering
into said contract of co-partnership, he was indebted to said
George W. Poundstone, and Mary Poundstone his wife in
the sum of three thousand two hundred and forty dollars,

for which, he, with John W. Corothers as his surety on the 10th day of June, 1872, executed to them his note, payable one year thereafter; that it was thereupon agreed between the plaintiff and said George W. Poundstone, that he (the plaintiff) should advance all the money necessary to commence said business, and that the one half of the money or capital so advanced and put into said business by the plaintiff, should be charged against said note of three thousand two hundred and forty dollars, and credited thereon as payments either in part or in full, according as such advances of capital should be sufficient or insufficient to entitle the plaintiffs to credits on said note to the full amount thereof; and *this agreement* being fully made known to the said Mary Poundstone, she fully *concurred in the same,* and *consented to the said arrangement,* and *expressly agreed that all sums of money and capital furnished to her said husband* by the plaintiff in *pursuance of the said agreement,* should constitute credits upon said note; and then avers that pursuant to this agreement between himself, Poundstone and wife, he did from time to time advance for the use of said co-partnership various sums of money amounting in the aggregate to six thousand six hundred dollars and thirty-two cents, whereof one half was advanced for George W. Poundstone; that the firm continued until June, 1873, when it had made considerable losses, which the said George W. Poundstone refused to pay or to credit on said note, which they endorsed to the defendant Thompson who endorsed it to the Deposit Bank of Brownsville, which placed it in the said First National Bank of Fairmont for collection, to which bank the defendant Corothers as the plaintiff's surety paid it, and that the proceeds thereof are the property of George W. and Mary Poundstone. The plaintiff claims in his bill, that for the advances so made by him to George W. Poundstone *he is entitled to recover against him,* the sum of three thousand three hundred and fifty dollars and sixteen cents which is justly due from him, and that he is entitled to attach the proceeds of said note in possession of the First National Bank of Fairmont to answer any decree which he may obtain against said George W. Poundstone; and prays that said Poundstone and wife may be decreed to pay him said sum of three thousand three hundred and fifty dollars

and sixteen cents; that said funds in bank may be subjected to the payment of his said demand, and for general relief. The First National Bank of Fairmont and Corothers answered the bill, admitting the payment of the note, and that the proceeds were held by said bank subject to the orders of the court.

Mary A. Poundstone answered at length, denying with the utmost precision, the truth of every material allegation of the plaintiff's bill, and especially that she ever agreed or consented that any money or capital that the plaintiff might, should or would furnish, or had furnished to her husband, as his half of the capital to be used in said pretended co-partnership business should be credited on said note for three thousand two hundred and forty dollars, or should constitute credits on said note; or that any such agreement or arrangement, as that set forth in the bill, or that any of like effect was ever made known to her, or that her consent or assent was ever asked to any such arrangement, or that she ever consented thereto. She avers that the three thousand two hundred and forty dollars, at the time she lent it to the plaintiff and ever since that day, was her own separate estate, and was owned by her before her inter-marriage with her present husband, which took place on the 17th day of May, 1872, and that her husband had not then, and he never has had any interest in, or control over any portion of said money—all of which facts were well known to the plaintiff before and at the time he borrowed it from her, and she gives a reasonable explanation of the fact that the note was made payable to her *and* her husband, and not to herself alone. None of the other defendants were served with process or appeared to the cause, and they were regularly proceeded against as absent defendants. The plaintiff replied generally to all the answers filed. A large number of depositions were taken and filed on both sides, and the court heard the cause on November 5, 1875, and entered a decree settling the principles of the cause, declaring the said partnership established, and that by virtue of said co-partnership between the plaintiff and George W. Poundstone, and the assent of the defendant, Mary A. Poundstone, to the same, and her agreement with the plaintiff as alleged in his bill, the proceeds of the

said note of three thousand two hundred and forty dollars, should be subject to the amount which should appear to be due to the plaintiff from the defendant, George W. Poundstone, upon a settlement of the business of said partnership, and referred the cause to a commissioner to settle the partnership transactions and to ascertain the amount of the fund in bank subject to the plaintiff's attachment. On the 21st day of April, 1876, the cause was finally heard, when the court entered a personal decree in .favor of the plaintiff against the defendant, George W. Poundstone, for the sum of three thousand seven hundred and eighty-seven dollars and thirteen cents with interest thereon from that day and his costs; and that the said First National Bank, of Fairmont, pay to the plaintiff the sum of three thousand six hundred and forty-one dollars and seventy-nine cents, which from the commissioner's report appears to be in its possession subject to the plaintiff's attachment, and that said sum be applied as a credit upon the amount decreed to the plaintiff, and that for the balance, to-wit : two hundred and sixty-seven dollars and fifteen cents the plaintiff had leave to sue out execution.

From these two decrees the defendannt, Mary A. Poundstone, has been allowed an appeal to this Court.

*P. H. Keck* for appellant.

*James Morrow, jr.,* for appellee.

WOODS, JUDGE:

The appellant assigns seven grounds of error in said decrees, the first and third of which, if well taken are conclusive of all the others, and must end this controversy as far as she is concerned. The other five grounds of error, if such they be, affect the interest of the defendant George W. Poundstone who has never appeared in the cause, and who when these decrees were rendered, had his day in court to make the same appear.

The substance of the first ground of error assigned is, that neither of said decrees against appellant or her husband was warranted by the evidence, in this, that the evidence fails to

establish any *indebtedness* or liability, of George W. Pound-stone, or appellant to the plaintiff, or any contract or agreement between her and the plaintiff, or between her husband and the plaintiff, which was binding on her, to make the said three thousand two hundred and forty dollars, liable for the losses, debts, liabilities or defaults of her husband, and that the promise set forth in the bill, even if proved as alleged, was but a promise on her part to answer for the debt, default or misdoings of another, and not being in writing signed by her, was void. The third error assigned was, in subjecting any part or parcel of said money attached in the said First National Bank of Fairmont, to the payment of the recovery against the said George W. Poundstone.

The plaintiff in support of his pretensions took his own, and the depositions of six other witnesses, three of whom testify exclusively to matters between the plaintiff and Geo. W. Poundstone, in no wise tending to fix any liability on the appellant; and the greater portion of testimony of the witness Davis relates to the same matters, and according to the view we have taken of the case, it is unnecessary to determine whether this testimony shows that the defendant George W. Poundstone was indebted to the plaintiff or not.

The appellant took the depositions of nine witnesses, besides that of herself and husband. The testimony of four of them relates exclusively to matters of account in controversy between George W. Poundstone and the plaintiff. The testimony of the remaining five, relates exclusively to the ownership of the three thousand two hundred and forty dollars, and will be hereafter considered.

The plaintiff excepted to the competency of the appellant and her husband, as witnesses for each other in this suit. Whether the husband in this case was a competent witness for himself and incidentally for his wife or not, is from the view we take of the case immaterial, and we may consider his testimony as entirely out of it. But it does not follow, that because, according to the plaintiff's pretensions, the measure of the appellant's liability to him, must be determined by the amount which might be ascertained to be due to him from the husband, that she shall be incompetent to prove that she never bound herself to pay such liability of

her husband to the plaintiff, if any such should be shown to exist. It is her property which the plaintiff proposes to take, by virtue of an alleged agreement made between her and the plaintiff, which she denies she ever made. If the three thousand two hundred and forty dollars was the property of the appellant, she has the meritorious cause of action, and as to that she was a competent witness. *City of Wheeling* v. *Trowbridge, &c.,* 5 W. Va. 353.

From a careful examination of the testimony given by the appellant and by five of her witnesses, speaking from personal knowledge, wholly uncontradicted, and strongly corroborated by the testimony of the plaintiff himself, and by his witnesses, *Davis, M. D. Mercer* and *John Mercer,* we have no doubt, that the three thousand two hundred and forty dollars, at the time the same was lent to the plaintiff, and up to, and at the time it was attached, was the property of the appellant, and that no part of it, was ever the property of her husband. Did the appellant make the agreement with the plaintiff which he has alleged in his bill? and if she did was she bound thereby? In her answer to the bill she explicitly denies, that she ever made any such agreement; and she insists that even if she did do so, she is nevertheless not bound thereby, as it was a promise to answer for the debt, default or misdoing of her husband, and being without consideration, and *not in writing,* the same is void. The allegation of the bill, verified by the affidavit of the plaintiff, is that, after he and George W. Poundstone had entered into said co-partnership on the terms and stipulations therein stated, the said "agreement being fully made known to the said Mary A. Poundstone, she fully concurred in the same, and consented to the said arrangements, and expressly agreed that all sums of money and capital furnished to her husband by the plaintiff in pursuance of said agreement should constitute credits upon said note." This allegation is expressly denied by the appellant's answer to the bill, which is verified by her affidavit; and also by her in her deposition as a witness, taken on the 1st of October, 1874, wherein she was cross-examined by the plaintiff or his counsel. The plaintiff afterwards on the 14th of October, 1874, took his own, and the depositions of his witnesses, Davis and the two Mercers, on this particular point.

Without undertaking to re-produce here in detail the evidence of the plaintiff and his witnesses on this material question, yet from a careful examination of their testimony, and of the suggestive fact, that the only conversation which the plaintiff ever had with the appellant on this subject took place on a steamboat, at Greenfield, where he was loading coal, in the presence of M. D. Mercer and John Mercer, who pretend to have heard the same conversation, four or five days after she returned from Europe, and while these witnesses both prove that the plaintiff told each of them to remember the conversation as "*he might need them some day,*" and that neither they nor the plaintiff testify to such a promise as alleged in the bill, we are of opinion that the plaintiff has failed to prove the promise or agreement on the part of the appellant as is set forth in the plaintiff's bill.

But if the same had been fully proved as alleged, is the appellant bound thereby?

Construing the allegation of the bill on this subject, most strongly against the appellant, and most favorably to the pretensions of the plaintiff, it is in substance this: that having formed the co-partnership with her husband, and agreed to furnish all the capital necessary to commence the business, he wanted some assurance, or security, that in case of losses sustained by the firm, the said George W. Poundstone should pay his half thereof, and that the appellant being fully informed thereof, then agreed with the plaintiff in such an event to pay to him her husband's share of such losses, out of her own money then in the plaintiff's hands for which she held the said note of three thousand two hundred and forty dollars. Was this alleged promise on the part of the appellant, an original promise whereby she at once became bound, and her husband absolved from all responsibility on account of such possible losses, or was it collateral, whereby she was only bound to pay in case her husband was unable or failed to pay, while he still remained liable to the plaintiff for these losses until paid by him or his wife? That the plaintiff never intended to release him, is evident from the allegations and the prayer of his bill, for he avers, that "*George W. Poundstone* is justly due the plaintiff three thousand three hundred and fifty dollars and six-

teen cents, which he is entitled to *recover from him* on account of the advances made by the plaintiff for him in the partnership business, which *both* the Poundstones *refuse to pay*; and he prays that said *George W. Poundstone and* his wife may be decreed to pay him the said sum of three thousand three hundred and fifty dollars and sixteen cents." It is evident therefore, that the alleged promise of Mary A. Poundstone, was to stand bound to the plaintiff as the surety of her husband in case he made default in the payment of his share of partnership losses. It is equally evident that there was no consideration for the said promise, on the part of the said Mary, for the alleged partnership if it ever existed, was fully formed, and the terms thereof fully agreed upon, between the parties, before it is pretended she made any promise whatever; for the plaintiff avers in his bill, that *this agreement* between the plaintiff and her husband *being* fully made, known to her, &c., she *concurred* in the same, and *consented* to the *arrangements*, &c., and expressly agreed, &c. Her promise therefore was not only without consideration, but it was collateral, and her husband continued bound.

By section 1 of chapter 98 of the Code of West Virginia, it is declared that "no action shall be brought to charge any person upon a promise to answer for the debt, default or misdoings of another unless the promise or some memorandum. or note thereof be in writing, and signed by the party to be charged thereby or his agent."

This section of this statute, which is identical with section 1 of chapter 143 of the Code of Virginia, has been repeatedly before the court of appeals of Virginia before the formation of this State, and from the decisions of that court on this subject, this Court has no desire to depart.

In the case of *Waggoner* v. *Gray's Adm'rs*, 2 Hen. & Munf. 603, it was decided that, Gray being indebted to Slaughter, and Slaughter indebted to Waggoner, if Gray in consideration of his debt to Slaughter verbally promises to pay the debt of Slaughter to Waggoner; but Waggoner does not thereupon release Slaughter, the promise of Gray is a collateral undertaking, which is void under the statute of frauds. And Roane, judge, delivering his opinion in that case, discussing this point on which all the judges concurred says,

"that the distinction between an original and collateral promise is this: That where the person on whose behalf the promise is made, is not discharged, but the person agrees to see the debt paid, so that the promisee has a double remedy, the promise is considered as *collateral*, and must be in writing; but where the promiser undertakes to become the *paymaster* it becomes immediately *his* debt and he is liable without writing."

In the case of *Cutler* v. *Hinton*, reported in 6 Rand. 509, John Hinton sued Cutler to recover from him the sum of six hundred and forty-five dollars and thirty-five cents, the price and value of goods sold by Hinton to Theodorick Love, the son-in-law of Cutler, upon the authorised declaration of Cutler, to Hanserd & Co., and to any other merchant, of whom Love might wish to purchase goods, that he would pay for said Love the sum of four thousand dollars. In this case the promise of Cutler, and the sale of the goods in consequence thereof to Love who was insolvent at the time, were clearly proved. The court of appeals of Virginia in this case, held that the promise of Cutler was collateral, and not being in writing, could raise no claim against him.

In *Ware* v. *Stephenson*, 10 Leigh 155, Ware employed Vodges to build him a house, that Vodges being a stranger in the neighborhood and needing many articles out of the store of Stephenson, which he would be unable to pay for at the time he needed them, Ware went with him to the store of Stephenson and told him that V. was building a house for him, and would need different articles out of the store, and that he (Ware) could not pay for them until next harvest come, one year. Mr. S. assented to the proposition and furnished the goods to V. The account was kept by S. under the name of V., and S. frequently, while the account was running, called on V. for orders on W. in part payment of the account. For the unpaid balance of this account against V., Stephenson sued Ware, and the court of appeals held that the undertaking of Ware was collateral, and not being in writing he was not bound by it. In this case Standard, Judge, delivering the opinion of a majority of the court, speaking on this point said: "Whatever doubts may at one time have existed respecting the undertakings within the

scope of the first section of the statute of frauds, it has long since been definitely settled, that when the undertaking is for a consideration to be received by, or articles to be applied to, a third person, if the transaction be such that the *third person is responsible to the person who supplies the articles of, or from whom the consideration proceeds,* the undertaking is collateral, and *if oral,* is not binding."

In the case of *Noyes' Ex'r* v. *Humphreys,* 11 Gratt., the same principles are announced, where the person making the promise actually received the benefit of the consideration of the promise. In this case Noyes leased certain salt wells to Thompson for ten years, reserving rent to a large amount, and T. undertook to make very considerable improvements upon the leased premises, and to aid him in doing so Noyes advanced him two thousand dollars; T. employed Humphreys to execute part of the work, which T. was by his agreement with Noyes bound to do; T. being in embarrassed circumstances; Humphreys performed part of the work, and fearing that T. would not be able to pay him stopped his work and refused to proceed with it under his contract with Thompson. In this state of things, Noyes went up to the place and said to Humphreys: "The work is now commenced, it must go on. Go on and finish it, I will pay you for it," or "I will see it paid." Humphreys went on and finished the work, which was in progress between four and and six months, Noyes attending its execution and giving directions about it during that period. Thompson paid Humphreys on this work four hundred and thirty-six dollars, most of which was furnished by Noyes. For the balance due Humphreys, Thompson executed to him his bond, which he did not or could not pay, and thereupon Humpreys brought his action of *assumpsit* against Noyes, and these facts being proved on the trial, there were verdict and judgment in favor of H. for four hundred and fifty dollars. Upon a writ of error the court of appeals held that Thompson not having been released from his liability to Humphreys the promise of Noyes was a *collateral promise,* and not having been in writing was void by the statute of frauds.

The principles settled by these cases meet our approval, and applying them to the facts of the case under considera-

tion, we hold that the promise of Mary A. Poundstone, as alleged in the plaintiff's bill, was a collateral promise, and not having been in writing was void by the statute of frauds.

It follows therefore that the appellant is entitled to all of the proceeds of her note of three thousand two hundred and forty dollars, with interest thereon accrued, discharged of the lien of the plaintiff's attachment less such reasonable charges as the said First National Bank of Fairmont may be entitled to for the collection thereof; and that if the whole or any part of the proceeds of said note has been received by or paid over to the said plaintiff, she is entitled to a decree against him for the amount so received by him with interest from the time he received the same, together with her costs in said circuit court expended; and that if any part of the proceeds of the note of three thousand two hundred and forty dollars remains in the custody of the said bank she is entitled to a decree against it for such proceeds with interest thereon from the time the same was received by it. We are therefore of opinion that the decrees of the circuit court of Marion county rendered in this cause on the 5th day of November, 1875, and on the 21st day of April, 1876, are erroneous, and must be reversed, with costs to the appellant; and the cause must be remanded to the said circuit court to be further proceeded in according to the principles settled in this opinion and according to the rules and practice in courts of equity.

REVERSED. REMANDED.