# CHARLESTON.

## GEROW v. RIFFE.

Submitted January 25, 1887.—Decided March 26, 1887.

1. ACCEPTANCE—CONDITION.

An order to "pay four hundred dollars out of funds, that may be due me as *per* our contract," is not absolute but conditional; and the acceptor's liability is dependent on the contingency, that according to the terms of the contract anything may be due the drawer thereon. (p. 462.)

2. ACCEPTANCE—CONDITION—CONSIDERATION.

Where A. held liens on two lots of B., and C. bought the two lots, and in consideration, that A. would release the liens, he paid her $300.00 in cash, and accepted an order drawn by B. on himself for $400.00 to be paid out of funds, that might be due on a certain contract, and A. made the release and accepted the money and the conditional order, and their contract failed, and no money was due on it, and C. afterwards promised to pay the $400.00. HELD—

There was no consideration for such promise; and the order being conditional, and the condition having failed, no recovery can be had on the order. (p. 468.)

*Thompson & Pack* for plaintiff in error.

*W. W. Adams* for defendant in error.

JOHNSON, PRESIDENT :

This is an action of assumpsit brought in the Circuit Court of Summers county in March, 1885, by Sarah A. A. Gerow against M. A. Riffe to recover the amount of a certain order given to the plaintiff by J. H. Gunther on M. A. Riffe and by said Riffe accepted. The declaration contains the common counts and a special count on the order. The order is as follows :

" HINTON, W. VA., Oct. 6, '83.

" MR. M. A. RIFFE :—

" Please pay to Mrs. S. A. A. Gerow four hundred dollars out of funds, that may be due me as per contract of October 5, 1883, I to pay the discount on the notes.

                                              " J. H. GUNTHER."

The acceptance is as follows :—

" I accept the within order to be paid according to contract October 5, 1883.

" *October 6, 1883.*                          M. A. RIFFE."

The defendant pleaded *non assumpsit ;* and on the 11th day of May, 1885, the issue was tried by a jury, and a verdict rendered for plaintiff for $438.00. The defendant moved for a new trial. The court overruled the motion and entered judgment, to which the defendant excepted.

From the bill of exceptions certifying the facts proven it appears, that on the 6th day of October, 1883, J. H. Gunther was indebted to the plaintiff in the sum of $581.00, the payment of which was secured by a lien on a house and lot No. 8 in the town of Hinton, and that said Gunther was also indebted to the plaintiff in another sum not secured, and that plaintiff had a lien on vacant lot No. 11 in said town to secure her as endorser for said Gunther on a note of $500.00 ; that on the 5th day of October, 1883, Gunther entered into a contract with defendant Riffe, which is set out and is in substance as follows:—Gunther sells Riffe the four new frame buildings on lots No. 1 and No. 2 in block Y.—Gunther agrees to plaster and paint said buildings, put in grates, hearths, &c., to build out-houses, &c., for which Riffe agrees to pay Gunther $3,000.00, Riffe to pay all purchase-money due on the lots deducting it from the $3,000.00, Riffe not to buy any paper on Gunther without the consent of the latter. It further appears from said bill of exceptions, that on the 6th day of October, 1883, the said Riffe purchased of Gunther said house and lot No. 8, and said vacant lot No. 11, on which the plaintiff had liens for $581.00 and $500.00; that upon the same day she released said liens and defendant settled with her $300.00 of her claims against Gunther, Gunther at the same time giving the order of $400.00 on Riffe, which Riffe

accepted;—that the said $300.00 and the said order for $400.00 included a portion of plaintiff's claims against Gunther, which were not secured as well as the $581.00, which was secured;—that at this time Gunther was in failing circumstances and soon afterwards became insolvent and was not able to carry out the contract of October 5, 1883, made with Riffe, not being able to make title to the property or to finish the houses;—that Riffe undertook to complete the houses, the cost thereof to be deducted from the price, which he had agreed to pay;—that at the time said release-deeds were executed, defendant knew of the state of the title to the property mentioned in the contract of the 5th of October, 1883, and knew, when he made said contract, that said houses belonged to Gunther and Shanklin;—that after the 5th of October, 1883, Shanklin brought a suit for the purpose among other things of setting aside said contract on the ground that the four houses belonged to the firm of Gunther & Shanklin, and the court set aside and annulled said contract and decreed, that the amount expended on said houses by Riffe be refunded to him.

The court also certified, that there was evidence introduced by the plaintiff tending to show, that the said releases were executed by plaintiff at the instance and request and for the benefit of defendant as well as of Gunther and in consideration of said written order and acceptance of October 6, 1883, and also tending to prove, that after said Gunther had failed and become unable to carry out his contract with Riffe, and after Riffe had attempted himself to complete the houses, said Riffe had promised to pay the said $400.00 to Mrs. Gerow, the plaintiff;—that there was also evidence tending to prove, that said releases were made at the instance of Gunther alone and for his benefit alone, and tending also to show, that said promise to pay by the defendant was only the expression of his opinion, that there would be money enough to pay said order of $400.00 after finishing said houses;—that there was also evidence tending to prove, that Isaac Gerow, agent for the plaintiff, knew, that Shanklin was part owner of said four houses and lots mentioned in said contract of October 5, 1883. The bill of exceptions states, that it certifies all the facts proved; but it is quite

clear, that there was contradictory evidence as to some material matters involved in the action.

The only question here presented is :—Did the court err in refusing to set aside the verdict and grant a new trial? It is insisted by counsel for plaintiff in error, that the order and acceptance were conditional, and the condition having failed, the acceptor was not bound to pay the order. If this is all, that the bill of exceptions shows, the defendant is entitled to have the verdict set aside.

The acceptance of an order for the payment of money out of the amount to be advanced by the drawer, when the houses, which he was then erecting on the drawee's land, should be so far completed, that the plastering should be done, according to the contract between the parties, is not absolute but conditional; and the acceptor's liability thereon is dependent on the contingency of the work being completed to a certain stage according to the contract. (*Newhall* v. *Clark*, 3 Cush. 376.)   So here the acceptor's liability, according to the terms of the order itself and its acceptance, was contingent upon whether or not there should be any money due from the acceptor to the drawer under the terms of the contract made between them on the 5th day of Ocber, 1883.   It does not appear, that under that contract anything became due from the acceptor, Riffe, to the drawer, Gunther.   But it is claimed, that the evidence tended to prove, and for the purpose of this case it must be regarded as proving, that the defendant induced the plaintiff to release her liens on lots No. 8 and No. 11, which he had bought from Gunther, and paid her $300.00 and agreed to pay her $400.00 ; and that this was not a promise to pay the debt of another ; and is not therefore within the statute of frauds.   It may be stated as a general rule, that whenever the main purpose and object of the promisor is not to answer for another but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of the promise may incidentally have the effect of extinguishing the liability of another.   Many cases lay down and illustrate this principle.   (*Williams* v. *Lesser*, 3 Burr, 1886; *Burr* v. *Wilcox*, 13 Allen 269 ; *Fish* v. *Thomas*, 5

Gray 45; *Wills* v. *Brown,* 118 Mass. 137; *Hindman* v. *Langford,* 3 Strob. 207; *Merciere* v. *Andres,* 5 Wind. 462; *Stewart* v. *Hinkle,* 1 Bond C. C. 506; *Prime* v. *Koehler,* 77 N. Y. 91; *Emerson* v. *Slater,* 22 How. 28; *Clay* v. *Walton,* 9 Cal. 328; *Young* v. *French,* 35 Wis. 111; *Lemon* v. *Box,* 20 Tex. 329; *Olmstead* v. *Greenly,* 18 Johns. 12; *Allen* v. *Thompson,* 10 N. H. 32; *Slingerland* v. *Morse,* 7 Johns. 463; *French* v. *Thompson,* 6 Vt. 54; *Mitchell* v. *Griffin,* 58 Ind. 559.)

The object of the statute manifestly was to secure the highest and most satisfactory species of evidence in a case, where a party without apparent benefit to himself enters into stipulations of suretyship, and where there would be great temptation on the part of the creditor in danger of losing his debt by the insolvency of his debtor to support a suit against the friends or relations of the debtor, a father, son or brother for instance, by means of false evidence, by exaggerating words of recommendation, encouragement or forbearance and requests for indulgence into positive contracts.

The terms *original* and *collateral promise,* though not used in the statute, are convenient enough to distinguish between the cases, where the direct leading object of the promise is to become the surety or guarantor of another's debt, and those, where the leading object of the undertaker is to serve or promote some interest of his own, though the effect of the promise is to pay the debt of another. The former, whether made before or after or at the same time with the promise of the principal, is not valid unless manifested by evidence in writing. The latter, if made on good consideration, is unaffected by the statute, because, though the effect of it is to release or suspend the debt of another, that is not the leading object of the promisor.

The rule to be derived from the decisions seems to be this,—that cases are not considered as coming within the statute, when the party promising has for his object a benefit, which he did not before enjoy, accruing immediately to himself; but, where the object of the promisor is to obtain the release of the person or the property of the debtor or other forbearance or benefit to him, it is within the stat-

ute. (1 Shaw, C. J., in *Nelson* v. *Boynton*, 3 Metc. 396).
In that case it was held, that a promise to pay the note of a
third person, which is in suit, and which is secured by an
attachment of the debtor's property, in consideration of the
holder's discontinuing the suit thereon is within the stat-
ute of frauds and is not valid, unless it be in writing. The
Chief Justice said :—" Although the effect of the discontinu-
ance of the action was to discharge the attachment, that
was incidental only, and the leading object and purpose the
relief and benefit of the father and not of the son. It does
not appear, that the son had any interest in the estate re-
leased, or object or purpose of his own to subserve. It is the
ordinary case of a son becoming surety for the father's debt
in consideration of surceasing a suit, or other forbearance,
and therefore not being in writing is within the statute."

In *Curtis* v. *Brown*, 5 Cush. 488, the same learned judge
said :—" It is no sufficient ground to prevent the operation
of the statute of frauds, that the plaintiff has relinquished an
advantage or given up a lien in consequence of the defend-
ant's promise, if that advantage had not also directly en-
ured to the benefit of the defendant, so as in effect to make
it a purchase by the defendant of the plaintiff. (*Fish* v.
*Huchinson*, 2 Wils. 94 ; *Jackson* v. *Rayner*, 12 Johns, 291 ;
*Nelson* v. *Boynton*, 3 Metc. 403.) The cases, where it has
been held otherwise, are those, where the plaintiff in consider-
ation of the promise has relinquished some lien, benefit or
advantage for securing or recovering his debt, and where by
means of such relinquishment the same interest or advan-
tage has enured to the benefit of the defendant."

In *Prime* v. *Koehler*, 77 N. Y. 91, it was held :—" Where
the purpose of the promise to pay the debt of a third person
is to secure a benefit of the promisor by relieving his prop-
erty from a lien or securing or confirming his possession, the
promise is original and not collateral, and so is not within
the statute of frauds."—Andrews, judge, in delivering the
opinion of the court, said :—" The circumstances being the
case directly within the third class of cases enumerated in
*Leonard* v. *Vredenberg* (8 J. R. 28), viz., where the promise
to pay the debt of another arises out of some new and origi-
nal consideration of benefit or harm running between the

newly contracting parties. In this class of cases the subsisting liability of the orignal debtor is no objection to a recovery. And when the purpose of the promise is to secure a benefit for promisor by relieving his property from a lien or securing and confirming his possession, the promise is original and not collateral, although a third person may be personally liable for the debt, and the promise may be in form a promise to pay such debt, and although the performance of the promise may result in discharging the debt."

(See also *Waggoner* v. *Gray*, 2 H. & M. 603; *Cutler* v. *Hinton*, 6 Rand. 509: *Ware* v. *Stephenson*, 10 Leigh 155; *Noyes* v. *Humphreys*, 11 Gratt. 636; *Ratcliffe* v. *Poundstone*, 23 W. Va. 724).

Does the bill of exceptions show any facts to bring this case under the rule we have cited?—Unfortunately for the plaintiff, who has been injured, the facts proved clearly show, that she released her liens on lots No. 8 and No. 11 in consideration of the $300.00 in cash and the acceptance of the conditional order. That was undoubtedly the consideration, and she was bound to know the law, which holds, that it was a conditional order, and that she would never receive anything thereon, unless the contract of the 5th of October, was carried out and money from Riffe to Gunther was due thereon. The consideration then passed, and even if the jury had evidence before them, that Riffe after that time, when the condition in the order had failed, promised to pay the $400.00 mentioned in the order, that would not have justified them in finding for the plaintiff on such a promise; for there was no consideration to support it. In no view of the case therefore can we see any evidence, which proved or tended to prove any fact in the case, which would justify the verdict of the jury.

The judgment must be reversed, the verdict of the jury set aside, and a new trial granted.

REVERSED. REMANDED.