CORA OGDEN SPRAGG *et al. v.* SAM C. POLINO

(No. 7675)

Submitted November 1, 1933. Decided November 28, 1933.

*H. H. Rose,* for appellant.
*Wm. P. Lehman,* for appellees.

MAXWELL, PRESIDENT:

This is an appeal from a decree specifically enforcing a contract of purchase of real estate.

September 13, 1929, at Fairmont, West Virginia, the plaintiff W. H. Spragg and the defendant entered into a

verbal contract for the sale of a portion of a certain lot of land in Fairmont belonging to the plaintiff, Cora Ogden Spragg, to the defendant for $1,000.00, whereof $300.00 was to be paid within sixty days, and the residue to be evidenced by seven notes in the sum of $100.00 each. In pursuance of said agreement the defendant, on said date, executed a note for $300.00 payable to Mrs. Spragg sixty days after date at a bank in Fairmont. On the face of the note were written these words: ''Secured by Vendor's Lien on Fairmont, W. Va. real estate.'' It was further understood that upon payment of the note, which was retained by the plaintiffs' attorney at Fairmont, a deed for said real estate to be drawn by plaintiffs' attorney and executed by plaintiffs was to be delivered to the defendant. No memorandum other than the note was signed by any of the parties on said date. On September 17, 1929, plaintiffs' attorney prepared a deed for the purpose of conveying said property to the defendant, and mailed the deed to them at Washington, D. C., where they resided. The deed was acknowledged by the plaintiffs in the city of Washington October 29, 1929, and immediately returned to their attorney. The defendant refused to accept the deed when the same was tendered him. His position is that there is no contract binding him to accept a deed for the property and to pay for the same. He relies on the statute of frauds in defense of this suit.

Plaintiffs take the position that the said note of September 13, 1929, with the above quoted notations thereon, signed by the defendant, is a sufficient memorandum under the statute of frauds to bind the defendant. Our statute provides: ''No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence.'' Code 1931, 36-1-3.

In justification of the trial chancellor's decree requiring the defendant to accept the deed for the property and to pay therefor the amount provided for in the verbal agreement of September 13, 1929, with interest, the plaintiffs urge that the above quoted phrase, ''Secured by Vendor's Lien on Fair-

mont, W. Va. real estate'', necessarily implies a deed of conveyance, because, under our statute, Code 1931, 38-1-1, there cannot be a vendor's lien in any other sort of instrument, and that under settled principles of law, the fact that the deed was not in existence at the time the note was executed is not material. Granting, but not deciding, that the phrase on the note may be interpreted as making reference to a deed between the parties, we are unable, notwithstanding the forceful argument and brief of counsel for the plaintiffs, to accede to the proposition that a deed not in existence at the time the note was signed may be considered in connection with the note for the purpose of supplementing the memorandum on the note, in order to identify the property involved and to establish the terms of the transaction.

Plaintiffs, in support of the proposition that a memorandum under the statute of frauds may be supplemented by reference to another instrument not in existence at the time the memorandum was executed, rely principally on the case of *Freeland* v. *Ritz*, (Mass.) 28 N. E. 226. It was there held: ''An agreement to sublet rooms, 'the lease to be in substantial accordance with the blank form hereunto annexed', and to be made subject in all respect to the terms and conditions of an 'agreement and lease' to be made by the owners to the lessor, is a sufficient memorandum of the terms of the lease to satisfy the statute of frauds, after the lease to the lessors referred to has been executed.'' That point of decision seems to have been based on *Brown* v. *Bellows*, 4 Pick. (Mass.) 179. There, a written agreement was entered into for the sale and purchase of a certain parcel of real estate and appurtenances ''at such prices as shall be agreed on and awarded by three men, one chosen by the plaintiff, one by the defendant, and the third by the two thus chosen, which awards shall be final and binding on the parties.'' The referees thus provided for promptly made their findings of prices. The court held that the memorandum between the parties, thus supplemented, was sufficient under the statute of frauds. This seems sound reasoning, but in our judgment the above noted point of decision in the case of *Freeland* v. *Ritz* not only is unsupported by the *Bellows* case, but is not sound in reason. If a writing not in existence when a memorandum is signed may

be considered by way of amplification of such memorandum, and the terms of the later writing be made binding upon the party to be charged by the memorandum, though he had no part in the preparation of the later writing, there would be presented a situation wherein certainty of contract would be thrown to the winds, and opportunities for fraud and imposition would be open and notorious. The soundness of the *Freeland-Ritz* case is questioned by the author in Williston on Contracts, p. 1123.

There can be no question that, under the statute of frauds, writings other than the memorandum signed by the party to be charged may, in proper circumstances, be looked to and considered in establishing the contract between the parties, but, in reason, consideration can be given only to such other writings as were in existence at the time of the execution of the memorandum. "In the case of any signed paper, those writings referred to in it may be read, provided they were in existence at the time when the papers referring to them were signed." Browne on Statute of Frauds (5th Ed.), sec. 346-b. In the English case of *Woods* v. *Midgley,* 43 Eng. Reprints 784; the Lord Justices held that a memorandum reciting that A had paid to B fifty pounds as a deposit in part payment of one thousand pounds for the purchase of a house, the terms to be expressed in an agreement to be signed as soon as prepared, was not sufficient under the statute of frauds. In the opinion, the court said that the provision in the memorandum that the terms would be settled "throws the matters all loose again, and enables the defendant to resile from the terms contained in the draft drawn up by the attorney's clerk, and to say that he will not be bound by them."

"It is not necessary that the memorandum should consist of a single instrument. Several distinct and separate writings may be construed together as containing all the terms of the contract, though only one of them be signed by the party to be charged. But such separate writings must expressly refer to each other or be so connected, physically or otherwise, as to show unmistakably that they relate to the same transaction." 29 Am. & Eng. Ency. of Law (2d Ed.), p. 850. "The memorandum may consist of several writings, (a) if each writing is signed by the party to be charged and the writings

indicate that they relate to the same transaction, or (b) though one writing only is signed if (i) the signed writing is physically annexed to the other writings by the party to be charged, or (ii) the signed writing refers to the unsigned writing, or (iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings." American Law Institute, Restatement of the Law of Contracts, Vol. 1, sec. 208. These carefully phrased statements of the law refer to writings existing at the time of the execution of the memorandum, and necessarily exclude the idea that a written memorandum may be supplemented by writings not in existence when it was signed.

The English Statute of Frauds (29 Car. II, ch. 3) was enacted in 1677 under the title "An Act for Prevention of Frauds and Perjuries". Its purpose, as recited in the preamble of the act, was for the "prevention of many fraudulent practices which are commonly endeavored to be upheld by perjury and subornation of perjury." More modernly expressed: "The purpose of the statute is to prevent fraud and perjury in the enforcement of obligations depending for their evidence upon the unassisted memory of witnesses by requiring certain enumerated contracts and transactions to be evidenced by a writing signed by the party to be charged." 27 Corpus Juris 123. In respect of the clause of the statute of frauds pertaining to the purchase and sale of real estate, it has been wisely observed that "there is manifest policy in requiring contracts of so important a nature as the sale and purchase of real estate, to be reduced to writing; since otherwise, from the imperfection of memory, and the honest mistakes of witnesses it must often happen either that the specific contract is incapable of exact proof, or that it is unintentionally varied from its original terms." *Wright* v. *Pucket,* (Va.) 22 Gratt. 370. The highest and most satisfactory species of evidence is the result sought by the statute. *Gerow* v. *Riffe,* 29 W. Va. 462, 2 S. E. 104. These considerations are repellant of a judicial interpretation of the statute which would open wide the sluice gates of disagreement and contention.

In the light of our holding that the deed executed by the plaintiffs cannot be considered as a supplement of the memorandum (note) signed by the defendant, other legal proposi-

tions advanced by the plaintiffs become inconsequential. There being no sufficient memorandum signed by the party to be charged, he is not bound, and that is the end of the matter. The fact that the deed executed by the plaintiffs would constitute a sufficient memorandum to bind them at the suit of the purchaser, does not operate to bind him under the equitable doctrine of mutuality, because the statute requires that the party sought to be charged—the party proceeded against for specific performance—shall have bound himself by his signature, or by that of his agent. This stands as adamant, save only as modified by the equitable doctrine of part performance, not here involved.

It follows that there must be a decree here reversing the decree of the learned trial chancellor and dismissing the plaintiffs' bill with costs, reserving to the plaintiffs their rights at law, if any they have, upon the note in question.

*Reversed and rendered.*