ALEX J. COCHRAN

*v.*

OLLIS CREEK COAL COMPANY, *et al.*

*Defendants below,*

INTERSTATE DEVELOPMENT CO.,

*Appellant*

(No. 13368)

Decided July 9, 1974.

*James E. Spurlock, Richard W. Cardot* for appellant.

*Morton & Garrett, Ernest V. Morton, Jr., and William C. Garrett* for appellee.

NEELY, JUSTICE:

This is an appeal from a final order of the Circuit Court of Webster County which entered judgment on a jury verdict in favor of Alex J. Cochran in the amount of $6,427.15. The plaintiff below, Cochran, brought this action against the appellant, Interstate Development Company, upon the grounds that certain coal mined and stockpiled by Ollis Creek Coal Company (who made no appearance in this action) was assigned to Interstate in consideration of Interstate's undertaking to pay and discharge obligations of Ollis Creek, which included claims for wages, and plaintiff's claim against Ollis Creek for trucking services performed by his company. Plaintiff maintained that in order to induce plaintiff to transport stockpiled coal to the railroad, and to induce plaintiff to refrain from attaching coal already stockpiled by Ollis Creek, Interstate agreed to pay plaintiff the debt owed to him by Ollis Creek.

Interstate Development Company and Ollis Creek Coal Company were independent corporations which worked closely together for the production of coal. Interstate Development Company leased to Ollis Creek the land on which Ollis Creek's mines were located. The tipples used for loading the Ollis Creek coal were managed by

Interstate Development Company. The equipment used by Ollis Creek in its deep mining operation was owned by Ollis Creek; however, much of the equipment was purchased from Interstate under an agreement which permitted Interstate to deduct fifty cents from the purchase price of each ton of coal shipped by Ollis Creek to Interstate in payment for the equipment. The evidence discloses that Ollis Creek obtained financial advances and loans from Interstate for operating capital and arranged to repay these loans through deductions in the purchase price of each ton of coal sold by Ollis Creek to Interstate. The two corporations were separately owned and managed, and neither corporation had common owners of stock, common officers, nor common directors. Interstate provided advisory and coordinating services to Ollis Creek with regard to such subjects as mine safety and labor relations.

In January 1972 Ollis Creek ceased operations for lack of funds and the employees of Ollis Creek attached a certain stockpile of coal near the Ollis Creek mine to enforce their wage claims. On January 19, 1972 employees of Ollis Creek, Interstate officials, and the plaintiff, Mr. Cochran, met at Summersville, West Virginia for the purpose of reaching a settlement with regard to the Ollis Creek debts. As a result of that meeting Interstate advanced $18,000 to Ollis Creek for the specific purpose of paying Ollis Creek's employees and obtaining a release of the attachment in return for an assignment of all of Ollis Creek's interest in its mining equipment to Interstate. As a result of this meeting a memorandum was issued by Interstate Development Company which provided as follows:

"OLLIS CREEK COAL CORPORATION
MEETING TO BE HELD JANUARY 19, 1972

"The Ollis Creek Coal Company is an individually owned coal company with responsibilities to meet its own obligations. While the mine was being developed from July through December 1971, Interstate Development Company advanced Ollis Creek approximately $176,000. During this

time, Ollis Creek produced and shipped only 11,372 tons of coal leaving a balance owned to Interstate of $95,000. Because of the heavy loans so advanced, we felt we could only in the future pay in advance for coal actually mined.

"During the first two weeks of January, Ollis Creek made requests in excess of $40,000 while shipping only 2,000 tons of coal which would net Ollis Creek $14,000. With this rate of loss and the refusal of Ollis Creek to expediously [*sic*] improve its road conditions, we felt we could not succeed. We have not been able to determine from Ollis Creek's books what the money advanced has been used for. We do know, however that the Selvey family received $3,100 per month for salaries. We do not mean to intiminate [*sic*] that Selvey had done anything basically wrong but do feel that with this obligation, we should be able to examine his books to determine where the money was spent.

"We asked Mr. Selvey last Friday to bring these books in but except for some cancelled checks, we were not able to see any of his records. His daughter is being paid $600 per month to keep books but does not have an adequate system set up. Two out of three former partners came to the office with him in an effort to develop the same information but were unsuccessful. Nothing has been paid to them on the Ollis debt. Mr. Selvey stood up during the meeting and voluntarily offered the business to them and offered to leave.

"It is our feeling that we have reached the limit. *Interstate is willing to make the following offer to the employees of Ollis Creek in exchange for releasing the coal and other items of equipment. We will deposit to the account of Ollis Creek an amount sufficient to meet the payroll of the workers through January 21, 1972. In turn, the stockpile will be released to Interstate so that we can recover as much of this amount as possible. It will also be used to square the account of Mr. Cochran.*

"We would like everyone to understand that there has not been any intent upon the part of Interstate to see the employees of Ollis Creek

> denied money they have rightfully earned. Rather we had to straighten out the mess before we could do anything. We do hope sometime in the future to operate this mine on another basis and hope that any hard feelings generated by the closing of this mine will be disspelled." (Emphasis added.)

That part of the memorandum which the Court has set forth in italics, particularly the last sentence referring to Mr. Cochran, is the part upon which plaintiff relied in his contract action.

The appellant maintains that the admission into evidence of the relationship between Ollis Creek and Interstate was prejudicial error as the plaintiff did not demonstrate any unity of ownership, unity of control, fraud, or agency which would permit the Court to pierce the corporate veil and hold Interstate directly liable for Ollis Creek's debt. The trial court agreed that the corporate relationship was not of such a nature as to make Interstate directly responsible for Ollis Creek's debts. However, this Court finds that plaintiff fairly tried the issue of corporate unity, and while plaintiff was not successful in proving either unity of control, fraud, or agency, those questions were placed in issue by plaintiff's theory of the case, and we hold that the evidence introduced for the purpose of establishing direct liability of Interstate for Ollis Creek's debts was not prejudicial, as the court correctly declined to give plaintiff's instruction on that subject and gave defendant's instruction No. 1 which said that if past services rendered by plaintiff were not rendered at Interstate's request, then such past services alone without more would not constitute sufficient consideration to sustain Interstate's promise to pay plaintiff. The rule is well stated in 29 AM. JUR. 2d, *Evidence,* § 255, as follows:

> "Relevancy does not depend upon the conclusiveness of the evidence offered, but upon its legitimate tendency to establish a controverted fact. Evidence which tends to prove a fact, regardless

of how slight such tendency is, should be admitted."

Appellant's primary assignment of error is that plaintiff did not prove any contract between himself and Interstate which would permit him to hold Interstate liable to him for Ollis Creek's debt. This Court disagrees and finds that the memorandum quoted above is evidence of a contract between Cochran and Interstate, the consideration for which was Cochran's forbearance in not prosecuting his legal rights by attaching the stockpile of coal. Accord: *First National Bank v. Marietta Manufacturing Co.*, 151 W. Va. 636, 153 S.E.2d 172 (1967). The evidence in the record discloses that Cochran contacted his attorney and was advised that he had a right to attach the assets of Ollis Creek. Cochran did not immediately pursue this remedy, but rather waited until the meeting at Summersville at which time he was satisfied that his claim would be paid by the statements of the officers of Interstate. Cochran introduced evidence that it was in reliance upon those statements that he refrained from attaching the coal and that the officers of Interstate bargained for such forbearance in promising to pay Ollis Creek's debt.

Appellants maintain that Cochran's action required reliance upon the doctrine of promissory estoppel, and that Cochran could not successfully invoke the doctrine because he failed to prove that his rights had been prejudiced as he did not demonstrate that at the time of the suit he still could not have attached the coal. While successful reliance upon the doctrine of promissory estoppel may require an irremediable change in position, *Norfolk & W. R. Co. v. Perdue*, 40 W.Va. 442, 21 S.E. 755 (1895) this Court holds that Cochran's suit in contract did not require reliance on promissory estoppel, as he had a contract, the consideration for which was forbearance in the enforcement of a legal right. See annotation, 78 A.L.R. 2d 1414, § 15 and cases cited in that annotation.

In general promissory estoppel is an equitable doctrine which, under certain circumstances, will nullify the

defense of lack of consideration in a contract action. 7 M.J., *Estoppel,* § 14. Thus in certain circumstances where the promisor leads the promisee to rely to his detriment courts will permit the promisee to recover in spite of a lack of consideration to the promisor. However, in this case there is no question of promissory estoppel as the promisor received the traditional consideration of forbearance in the enforcement of a legal right. By such forbearance plaintiff accorded the defendant an immediate benefit in return for the defendant's assurance that the debt to plaintiff would be paid. The defendant acquired the immediate right to dispose of the coal without hindrance by any writs of attachment and the plaintiff suffered the detriment of potential removal of the coal beyond his power to enforce a lien.

Forbearance in the enforcement of a legal right is a traditional consideration in contract law. As this court said in *Huff v. Lanes Bottom Bank,* 110 W.Va. 389, 158 S.E. 380 (1931):

> " 'If the promise[e], at the instance of the promisor and moved by his promise, do any act which occasions him even the slightest trouble or inconvenience, or in doing which he incurs a risk, the act so performed constitutes a valuable consideration for the promisee'; and as a relinquishment of a right it is immaterial whether it be of benefit to the promisor or of detriment to the promisee."

Therefore, in the event of breach of a contract grounded upon the consideration of the promisee's forbearance in the enforcement of a legal right, it is not necessary for the promisee to prove that he has suffered a deterioration in his original position, and he may elect either to enforce the original right or sue directly on the contract. While the Court has discovered no West Virginia case directly on point with regard to the promisee's right to elect his remedy under the factual circumstances of forbearance, the cases of *Bare v. Victoria Coal & Coke Co.,* 73 W.Va. 632, 80 S.E. 941 (1914) and *Annon v. Lucas,* 155 W.Va. 368,

185 S.E.2d 343 (1971) stand generally for the proposition that in a contract action where one has been wronged and has a number of remedies, he may select the most efficient one. In the case at bar, the promisee elected not to attach the coal after breach, which he could have done, but rather to sue Interstate directly on the contract. Under the evidence in this case we find plaintiff's instruction No. 6 to be a correct statement of the law, particularly when read in conjunction with defendant's instruction No. 4. Plaintiff's instruction No. 6 said:

"The Court instructs the jury that if you believe from a preponderance of all the evidence in this case that defendant Interstate promised to pay plaintiff Cochran of the amount owed Cochran by defendant Ollis Creek, that Cochran relied upon said promise and withheld suit against Ollis Creek to attach Ollis Creek's stockpile of coal and other assets, that Cochran's forebearance enabled Interstate to obtain certain of Ollis Creek's assets free of any lien from Cochran, then Cochran is entitled to enforce that promise in his action and your verdict should be for the plaintiff and against both defendants."

Defendant's instruction No. 4 said:

"The Court instructs the jury that mutual assent in the form of promises exchanged, each as the bargained-for price of the other, or a promise conditioned on performance of an act as the exchange, is the test of enforceability applied by our law.

"Therefore, if the jury finds that the defendant, Interstate, and the plaintiff did not enjoy a mutual assent as to payment by defendant to plaintiff for debts owed plaintiff by defendant, Ollis Creek, then you must find for the defendant, Interstate, unless the defendant, Interstate, made a promise to pay the said back debt in exchange for a completed performance of an act by plaintiff."

Accordingly the judgment of the Circuit Court of Webster County is affirmed.

*Affirmed.*