**Troy Lee DOLIN, Plaintiff,**

v.

**COLONIAL MEADOWS, LTD., Kenneth M. Dolan, Harvey D. Peyton and Stuart W. Calwell, Jr., Defendants.**

Civ. A. No. 83–2217.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 29, 1986.

Robert S. Baker, Adler & Baker, Beckley, W.Va., for plaintiff.

Franklin L. Gritt, Calwell, McCormick & Peyton, Nitro, W.Va., for defendants.

Michael A. Braun, Charleston, W.Va. for Colonial Meadows.

Harry M. Hatfield, Madison, W.Va., for Kenneth M. Dolan.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Troy Lee Dolin has sued a corporate Defendant and three individual Defendants for allegedly breaching a contract. The individuals assert the statute of frauds as a defense and move to dismiss and for summary judgment in their favor. The Court, considering the motions [1] as made under *Rule* 56,[2] deems the same mature for decision.

## I. *Background*

The facts which can be gleaned from the record in this case are relatively uncomplicated. Troy Lee Dolin, a home builder by trade, alleges that he was retained by Colonial Meadows, Ltd., during 1979.[3] He agreed to perform labor for, supply building materials to, and provide the use of a bulldozer to Colonial Meadows. Dolin further alleges that he has received no compensation from Colonial Meadows for a portion of his services. His bill of $42,-095.16 includes $7,000.00 for labor, $27,-095.16 for building supplies, and $8,000.00 for the use of a bulldozer.

It appears that Colonial Meadows was unable to pay Dolin because of its own financial difficulties in 1979 and 1980. Dolin alleges that he threatened to sue the corporation and its shareholders if he was not paid. He also contends—and this is at the heart of the instant motions—that the Defendants Dolan, Peyton and Calwell[4] promised to pay the corporation's debt if he would not sue.

Dolin argues that in reliance upon the Defendants' promises, he delayed filing a mechanic's lien until such time as one was ruled untimely and that he did not file a civil action except this one. He claims that by making the promises of payment to him the Defendants were able to stave off Colonial Meadows' bankruptcy and to realize significant savings to themselves.

The individual Defendants deny that they ever promised to pay the debts of Colonial

---

1. Two of the individual Defendants, Harvey Peyton and Stuart Calwell, have joined together in moving the Court for relief. The other individual Defendant, Kenneth M. Dolan, has filed his own motion. The motions are virtually identical in the arguments made and the authorities cited.

2. Although the Defendants have styled their filings as motions to dismiss and for summary judgment, the latter classification is appropriate in that the Defendants have filed affidavits in support of their motions. *See Rule* 12(b). The Plaintiff has filed a counter-affidavit.

3. Dolin apparently had idle resources at the time he agreed to do some work for Colonial Homes. That he had fallen on hard times financially was reflected by his filing of a Chapter 11 bankruptcy petition sometime before the agreement in question.

4. The three individuals were shareholders of the corporation at the time the promises were allegedly made.

Meadows and that, in any event, such promises if made are not actionable because they were not put in writing.[5] Hence, the statute of frauds is raised as a defense.

## II. *Discussion*

The portion of the West Virginia Statute of Frauds implicated by the Defendants' defense provides as follows:

> "No action shall be brought in any of the following cases:
>
> \*    \*    \*    \*    \*    \*
>
> (d) To charge any person upon a promise to answer for the debt, default, or misdoings of another;
>
> \*    \*    \*    \*    \*    \*
>
> Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby or his agent."

*W.Va.Code*, § 55–1–1 (1981). This statute, identical to the Virginia statute from which it was borrowed, *Radcliff v. Poundstone*, 23 W.Va. 724 (1884), dates from the formation of the State. The statute was the subject of much litigation around the turn of the century, but has not been recently interpreted. Indeed, the last reported case *directly* considering the statute was decided in 1936.

■ The statute is one grounded in public policy. An early case summarized the purpose behind the statute:

> "The object of the statute manifestly was to secure the highest and most satisfactory species of evidence in a case, where a party without apparent benefit to himself enters into stipulations of suretyship, and where there would be great temptation on the part of the creditor in danger of losing his debt by the

insolvency of his debtor to support a suit against the friends or relations of the debtor, a father, son or brother for instance, by means of false evidence, by exaggerating words of recommendation, encouragement or forbearance and requests for indulgence into positive contracts."

*Gerow v. Riffe*, 29 W.Va. 462, 466, 2 S.E. 104 (1887). Thus, if a creditor seeks to prosecute a claim against a "mere voluntary surety or guarantor of another," there must be a writing. *Howell v. Harvey*, 65 W.Va. 310, 314, 64 S.E. 249 (1909).

■ In applying the statute, the decisions have recognized a distinction between a "collateral" and an "original" promise. A promise is collateral if the promissor is merely acting as a surety, that is, the promissor receives no benefit by way of the promise and the original debtor remains liable on the debt. A collateral promise is within the statute and must be reflected in a writing. An original promise, on the other hand, is one in which the promissor himself receives a benefit, though the effect may be to release or suspend the debt of another. *Gerow, supra.* An original promise is outside the statute and, hence, no writing is needed.

The original promise "exception"[6] to the statute of frauds on suretyship has been analyzed under the guise of a "leading object" test. *Gerow, supra.* The promise is said to be original if the leading object of the promissor was to gain some benefit or advantage for himself. *Mankin v. Jones*, 63 W.Va. 373, 60 S.E. 248 (1908). That the promisee may have suffered a detriment or given up an advantage is not enough; a benefit must inure to the promissor. *Gerow, supra.*

---

**5.** The Plaintiff did not plead the existence of a written contract. The Defendants represent that the Plaintiff admitted in a response to requests for production that he had no writing to credit his claim of a contract. The response has not been placed of record, but the Defendants' representations are not controverted by the Plaintiff.

**6.** The cases have from time-to-time used the term "exception" to describe the original promise rule. The Court believes this to be incorrect usage. If a promise is original, it is not "excepted" from the statute; it simply falls outside the purview of the statute.

The black letter rule evolving from the early cases is found in the *Howell* case:

"An absolute promise to pay the debt of another is not within the statute, though the liability of the original debtor still subsists where the leading object of the promissor is to serve some pecuniary interest or business purpose of his own, and he receives a benefit which he did not before enjoy, and would not have possessed but for the promise."

*Howell*, 65 W.Va. at 314, 64 S.E. 249 (*quoting* 29 A. & E.E.L. (2d Ed.) 929). This rule reflects the triumph of Chief Justice Shaw of Massachusetts over Chancellor Kent of New York on the issue. Shaw's teaching was that a benefit to the promissor was necessary and that such must be his leading object in making the promise. Kent, on the other hand, opined that a benefit to the promissor or a detriment to the promissee would suffice. Hence, he looked for some consideration between the parties.

An illustrative example of a benefit moving to the new promissor is found in the *Howell* case. Peyton, a contractor, had obligated himself to construct a building for the defendant. He hired a subcontractor to complete a substantial amount of the work. Peyton became financially embarrassed and was unable to pay the plaintiff. The plaintiff was about to discharge his employees and quit the job when the defendant stepped in and orally promised to pay Peyton's past and future obligations to the plaintiff if the plaintiff would finish the building. The plaintiff, relying upon the defendant's promises, then finished constructing the building. The defendants cited the statute of frauds and refused to pay. The Court held that the defendant by virtue of his promise had received a benefit, the completion of his building, which he otherwise would not have received. Thus, the promise fell outside the statute of frauds and the plaintiff was able to recover for his services.

Because the debt in the case at bar was in the first instance procured in the name of a corporation, the individual Defendants rely upon the principle that a promissor's indirect benefit as a shareholder in guaranteeing the debts of a corporation is not such a benefit as to take the promise outside the statute of frauds. *Hurst Hardware Co. v. Goodman*, 68 W.Va. 462, 69 S.E. 898 (1910). The *Goodman* court found the benefit to accrue directly to the corporation. The court opined that for the promise to be considered original, the benefit to the shareholding promissor must be "direct, immediate and personal." *Id.* at 470, 69 S.E. 898.

Applying the above principles to the instant case, the Court concludes that summary judgment would be inappropriate on the current state of the record.

■ With regard to Kenneth M. Dolan, the Plaintiff alleges in his affidavit that Dolan received a benefit in return for promising to pay the debt of Colonial Meadows. According to the Plaintiff, a meeting of the stockholders and creditors of Colonial Meadows occurred in early March of 1980. The meeting was designed to resolve some of the financial problems confronting the corporation. With Dolan indicating a desire to sell his interest in the corporation, the other shareholders decided to accomodate him by exchanging a parcel of the corporation's real estate for Dolan's stock. The Plaintiff contends that in reliance upon Dolan's promise to pay he postponed filing a mechanic's lien which would have interfered with the transfer.[7]

The Plaintiff is correct in his assertion that the forbearance of a legal right can constitute legal consideration for an agreement. *Cochran v. Ollis Creek Coal Co.*, 157 W.Va. 931, 206 S.E.2d 410 (1974). Moreover, if the allegations of the Plaintiff are true, Dolan would have received a benefit in that he was able to remove an obstacle to the real estate-stock exchange. The Court is also able to discern a genuine

---

**7.** The Plaintiff filed a mechanic's lien on March 29, 1980, after he allegedly learned that the deal between Dolan and Colonial had been consummated. Without elaboration, he represents that the lien was held to have been untimely filed.

issue of fact relating to the benefit which would accrue to Peyton and Calwell by the making of promises to the Plaintiff. The Plaintiff contends that he threatened to sue Colonial Meadows if he was not paid the money owed. He asserts that he withheld filing the suit because of the promises made to him by Peyton and Calwell. The Plaintiff finally filed this action on March 31, 1983. The affidavits of Peyton and Calwell reveal that they sold their interests in Colonial Meadows in December of 1982. The Plaintiff's implicit theory of the case is that Peyton and Calwell were buying time through their promises so that they could sell, or otherwise salvage their interests in Colonial Meadows before the corporation was forced to take action which would lessen its value, such as filing for bankruptcy. Although the proof may be difficult, the Court does not believe it beyond reason that the Plaintiff may be able to prove that Peyton and Calwell were dealing with him in such a way as to realize a peculiar personal benefit that which would normally inure to a shareholder of a corporation.[8]

The holding in this case that a jury should pass upon the question of whether the oral promises, if made, were original or collateral is buttressed by a line of cases in which the intent of the parties was held to be a central concern.

> "In determining whether an oral promise is original or collateral, the intention of the parties at the time it was made must be regarded; and in determining such intention the words of the promise, the situation of the parties and all the circumstances attending the transaction should be taken into consideration."

*Barley v. Sameth,* 106 W.Va. 463, 467, 145 S.E. 821 (1928). *See also Tynes v. Shore,* 117 W.Va. 355, 185 S.E. 845 (1936); *Security Bank Note Co. v. Shrader,* 70 W.Va. 475, 74 S.E. 416 (1912); *Johnson v. Bank,* 60 W.Va. 320, 55 S.E. 394 (1906). On the bare record—three affidavits and the complaint—now before the Court, it is simply not possible to discern the intent of the parties. The facts are undeveloped.

Consistent with the view that the mental state of the parties is relevant is the companion principle that the collateral-original promise issue is one of fact for the jury. *Barley v. Sameth, supra; Security Bank Note v. Shrader, supra; Johnson v. Bank, supra.* This is especially true when the evidence and the inferences drawn therefrom are conflicting.

■ Finally, the Defendants make much of the fact that the Defendant has named Colonial Meadows as a Defendant in this action. That the Plaintiff is still seeking to hold the corporation liable for the debt, they argue, is evidence that any promises made by the individual Defendants to the Plaintiff were collateral. While there is language in the cases which support the Defendants' position, *Barley v. Sameth, supra; Hurst Hardware Co. v. Goodwin, supra; Radcliff v. Poundstone, supra,* the Court believes the better view to be that expressed by Judge Brannon in his concurring opinion in *Howell:*

> "[A]s I understand the intricate question of direct and collateral promise, where there is no benefit accruing to the promissor, the fact that the main debtor still is bound is a test, showing the promise of the new man to be collateral and not good without a writing; but where a benefit goes to that new man, his promise is direct and binding without a writing, though the original debtor still remains bound."

65 W.Va. at 321, 64 S.E. 249.

### III. *Conclusion*

Having resolved all inferences in favor of the nonmoving party, the Plaintiff, the Court concludes that summary judgment would be inappropriate. The Court realizes that the ruling announced herein may ne-

---

**8.** The reason for the Court's focus on the existence of some benefit to the Defendants "is that the evidence of direct benefit substantially confirms the existence of the promise." *Brock & Davis Co., Inc. v. Charleston National Bank,* 443 F.Supp. 1175, 1180 (S.D.W.Va.1977) (analogizing suretyship section of statute of frauds to the section it was construing: vouching for the credit of a third party—*W.Va.Code,* § 55–1–1(a)).

cessitate special procedures at trial, such as special interrogatories to the jury and carefully drafted instructions. These problems, however, are not insurmountable and should not present the potential for prejudice. The Court will, as always, entertain suggestions from counsel.

For the above reasons, the Court denies the motions of the Defendants, Kenneth M. Dolan, Harvey Peyton and Stuart Calwell, to dismiss or for summary judgment. It is so ORDERED.